No. 98-836
Hillsborough-northern judicial district

EDITH L. TOMASKO

v.

VINCENT E. DUBUC

August 15, 2000

*Wiggin & Nourie, P.A.*, of Manchester (*Ellen M. Joseph* and *Douglas J. Wenners* on the brief, and *Doreen Connor* orally), for the plaintiff.

*Elizabeth Cazden*, of Manchester, by brief and orally, for the defendant.

DALIANIS, J. The plaintiff, Edith L. Tomasko, appeals from an order of the Superior Court (*Lynn*, J.) denying her post-divorce petition seeking court approval to relocate to Montana with the two minor children from her marriage to the defendant, Vincent E. DuBuc. We affirm.

The parties were married in 1978 and divorced in 1992. They have two children, a daughter and son, who, at the time of the initial hearing were thirteen and eleven respectively. Both parties were represented by counsel when they entered into a stipulation that was incorporated into the final divorce decree.

The stipulation provided that the parties would have joint legal custody of the children and awarded the plaintiff primary physical custody. The defendant was awarded liberal visitation. Because the children are the beneficiaries of substantial trusts created by the plaintiff's mother, the stipulation provided that the defendant was not obligated to provide child support unless a change in the children's or the parties' financial situation occurred. The stipulation also included the following provision:

> *LIVING DISTANCE*. The children shall reside in the State of New Hampshire unless the Superior Court of the Northern District of Hillsborough County shall otherwise decree.

In 1993, the plaintiff remarried. She and her new husband purchased a cattle ranch in Wilsall, Montana, and in 1998, she petitioned the court to modify the living distance restriction, reschedule the defendant's visitation rights, and order both parties to share equally the children's travel expenses between Montana and New Hampshire.

At the hearing on the merits, the plaintiff testified that she would not move to Montana if the court did not permit her to take the children with her. The trial court denied the plaintiff's petition and her subsequent motion for reconsideration.

The plaintiff appeals, contending that the trial court's order: (1) constituted an abuse of discretion; (2) violated her right to travel under both the New Hampshire and United States Constitutions; (3) violated her right to privacy under the United States Constitution; and (4) improperly modified the custody decree by conditioning her retention of custody on a residency restriction.

## I. Abuse of Discretion

Because neither party disputes on appeal the trial court's application of the analytical framework set forth in *Ireland v. Ireland*, 717 A.2d 676 (Conn. 1998), we apply that framework for the purposes of this appeal and do not decide what analysis New Hampshire courts should apply when faced with a relocation request. *Cf. State v. Cavaliere*, 140 N.H. 108, 109, 663 A.2d 96, 97-98 (1995) (no need to decide what test to adopt where parties stipulated to particular test for purposes of their case).

In *Ireland*, the Supreme Court of Connecticut set forth the following framework to analyze a request by the custodial parent to relocate with a child. The plaintiff, as the "custodial parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, and (2) the proposed location is reasonable in light of that purpose." *Ireland*, 717 A.2d at 683. Although the court did not define what a legitimate purpose was, it gave examples of what would and would not qualify. For example, a finding that the relocating parent has improper motives, such as "a vindictive desire to interfere in the relationship between the noncustodial parent and the child[ren]," would support a ruling that the relocating parent lacked a legitimate purpose. *Id.* at 681-82. A legitimate purpose would include, however, the pursuit of a "significant employment . . . opportunity." *Id.* at 682 n.5. The court noted that "a relocation motivated by a legitimate purpose should be considered reasonable unless its purpose is shown to be substantially achievable without

moving, or by moving to a location that is substantially less disruptive of the other parent's relationship to the child." *Id.* at 682 (quotation omitted).

"Once the custodial parent has made such a *prima facie* showing, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that the relocation would not be in the best interests of the child." *Id.* at 683. In determining what is in the best interests of the child, the court adopted the following factors: (1) each parent's reasons for seeking or opposing the move; (2) the quality of the relationships between the child and the custodial and noncustodial parents; (3) the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent; (4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally, and educationally by the move; (5) the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements; (6) any negative impact from continued or exacerbated hostility between the custodial and noncustodial parents; and (7) the effect that the move may have on any extended family relations. *Ireland,* 717 A.2d at 685, 686; *see Tropea v. Tropea,* 665 N.E.2d 145, 151 (N.Y. 1996). The court also instructed that "in relocation cases, it is not only proper to consider the interests of the [new] family unit as a whole, . . . but it is necessary to a determination of the child's best interests." *Ireland,* 717 A.2d at 685.

We now turn to the trial court's application of the *Ireland* test. The trial court found both that the plaintiff's proffered reasons for the move were not legitimate and that the defendant had proved by a preponderance of the evidence that the move would not be in the best interests of the children. The plaintiff appeals both determinations, but because we hold that the trial court did not abuse its discretion in finding that the proposed relocation was not in the children's best interests, we need not address whether the proposed relocation was for a legitimate purpose.

We review the trial court's finding that the proposed relocation to Montana would not be in the children's best interests for abuse of discretion. *See Richelson v. Richelson,* 130 N.H. 137, 144, 536 A.2d 176, 181 (1987); *Chasan v. Mintz,* 119 N.H. 865, 867, 409 A.2d 787, 788 (1979). We will not overturn the trial court's decision if it could reasonably have been made based upon the record. *See Richelson,* 130 N.H. at 144, 536 A.2d at 181; *Chasan,* 119 N.H. at 867, 409 A.2d at 788.

In reviewing the trial court's decision, we are mindful of the *Ireland* court's admonition that "[no] single factor [should] be presumed to carry dispositive weight . . . [and] any other facts or circumstances that could have a bearing on the court's determination . . . should be considered and given the appropriate weight in a court's analysis." *Ireland*, 717 A.2d at 686.

The trial court found that the "proposed relocation will have a substantial adverse effect on the relationship between the children and both the defendant *and* the plaintiff." This finding was based, in part, upon the fact that the defendant currently interacts with his children beyond his established visitation times through their extracurricular activities, which would become impossible if they were to move to Montana.

> There are undoubtedly circumstances in which the loss of midweek or every weekend visits necessitated by a distant move may be devastating to the relationship between the noncustodial parent and the child. However, there are undoubtedly also many cases where less frequent but more extended visits over summers and school vacations would be equally conducive, . . . to the maintenance of a close parent-child relationship, since such extended visits give the parties the opportunity to interact in a normalized domestic setting.

*Id.* (quotation omitted).

There was testimony that the defendant, in addition to attending the children's extracurricular activities, had significant contact with his children over the telephone. The children's guardian ad litem (GAL), a certified psychologist, testified that the plaintiff supported the children contacting their father by phone and that it would be important for this contact to continue if the relocation were allowed. The plaintiff testified that she would allow the telephone contact to continue if they relocated. Thus, the proposed relocation would not alter this aspect of the relationship between the defendant and his children. That one aspect of the defendant's relationship with his children would not change, however, does not preclude a finding that other aspects of the relationship would be so detrimentally affected that the proposed relocation would not be in the children's best interests.

The trial court also found that the proposed relocation was not in the children's best interests because

> there is a significant danger that, once the children become established in Montana, vacation periods will present a

dilemma for both father and child — the children because they may be torn between their desire to see their father, on the one hand, and their desire not to be separated from their friends and teammates for a prolonged period, on the other; and the defendant because he may be torn between his desire to see his children and his desire to avoid alienating them by forcing a visit that will interfere with their other activities.

The GAL expressed a similar concern that if the proposed relocation were approved, the new visitation schedule would perhaps interfere with the children's involvement in extracurricular activities.

■ The plaintiff contends that such concerns "cannot be given serious consideration in the determination of whether [the defendant] met his burden of proof." We disagree. A court must consider not only whether the custodial parent will comply with a modified visitation order, but also what impact the modified order will have on the children and their relationship with their noncustodial parent. See id. at 685. Thus, the trial court correctly considered whether the proposed modification would preclude the children from participating in their normal activities and what impact this would have on the likelihood that visitations would occur and the success of such visitations. Id. at 685-86.

At the hearing, evidence was presented regarding the children's involvement in extracurricular activities. With regard to the son's involvement in hockey and baseball, the evidence suggested that he would be unable to participate in these activities if he spent school and summer vacations with his father in New Hampshire. The evidence regarding the daughter's involvement in equestrian activities suggested that while she would still be able to participate, she would miss competitions and not be able to compete for certain awards. With regard to both of her children, the plaintiff testified that visitations with the defendant could take priority over any conflicting activities that the children might try to schedule.

The plaintiff argues that the trial court improperly substituted its judgment for that of the GAL who, she contends, believed that the relocation was in the children's best interests so long as the children could maintain telephone contact with the defendant. Our review of the GAL's testimony does not reveal such an unqualified endorsement. The GAL clearly stated that it was in the children's best interests to remain in the plaintiff's custody and "if that entailed moving to Montana then I think that's going to happen, but I think that there will be some disruption and pain for the children in this

move that needs to be addressed by the parents if this goes forward." The GAL testified that "[i]deally the situation would be that everything stays the same, but the children understand that there are dreams and wishes that people have and they are willing to go with the dream of their mother." Therefore, the trial court's decision that the proposed relocation was not in the best interests of the children was not inconsistent with the GAL's opinion at trial. Moreover, the GAL's recommendations are not binding upon the trial court. *See Richelson*, 130 N.H. at 143-44, 536 A.2d at 180.

■ We cannot say that the trial court abused its discretion in finding that it would not be in the children's best interests to relocate to Montana. *See Richelson*, 130 N.H. at 144, 536 A.2d at 181; *Chasan*, 119 N.H. at 867, 409 A.2d at 788. The record supports the trial court's conclusion that the proposed extended visitations over the summer and various school vacations would not be successful in preserving the relationship between the defendant and his children given that the children would likely have to choose between visiting their father and participating in their extracurricular activities. We therefore affirm the trial court's decision that the proposed relocation was not in the best interests of the children.

## II. Right to Travel

The plaintiff next argues that the trial court violated her constitutional right to travel under the United States and New Hampshire Constitutions by denying her petition to relocate the children.

■ We first address the plaintiff's claims under our State Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing federal law only to aid in our analysis. Because the New Hampshire Constitution affords greater protection to the rights of citizens to travel and to determine their own residency than that afforded by the United States Constitution, *see Angwin v. City of Manchester*, 118 N.H. 336, 337, 386 A.2d 1272, 1273 (1978), we address only the plaintiff's State constitutional claims.

The plaintiff contends that the trial court failed to analyze whether denying her "the ability to exercise her constitutional right to relocate to Montana was a necessary means of protecting the State's interest in the welfare of her children." Regardless of what analysis the trial court engaged in on this issue, we hold that under the facts of this case, the plaintiff waived her right to travel.

The defendant argues that the plaintiff made a voluntary, knowing, and intelligent waiver of her right to travel by entering into the stipulation that was incorporated into the final divorce decree.

Constitutional rights can be waived. *See D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-87 (1972). Assuming without deciding that a waiver of the right to travel must be, as in a criminal proceeding, knowing, voluntary, and intelligent, *but see In re Irene W.*, 121 N.H. 123, 125-26, 427 A.2d 24, 26 (1981), that standard was satisfied here. *See D.H. Overmyer*, 405 U.S. at 185-86.

The stipulation provision restricting the children's residence to New Hampshire unless a court decreed otherwise was added by the parties, not by the court. Although the trial court found that the provision was placed in the stipulation at the insistence of the defendant, the plaintiff testified that she requested it. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993) (party cannot argue divorce provision restricting right to move violates due process where party requested that very provision). Regardless of who initially requested the provision, the plaintiff, who was represented by counsel at that time, does not argue that she was unaware of the provision or that she did not understand its terms.

■ At oral argument, the plaintiff contended that the provision did not constitute a waiver of her right to travel because she did not agree that she or the children would live in New Hampshire until the children turned eighteen. Rather, she claims that she simply agreed that she would return to court if relocation became an issue. The language of the provision, however, does not merely require the plaintiff to inform the court of an intention to relocate. Instead, it clearly states that "[t]he children shall reside in the State of New Hampshire unless the Superior Court . . . shall otherwise decree." Accordingly, we conclude that the plaintiff made a voluntary, knowing, and intelligent waiver of her right to travel.

### III. Right to Privacy

The plaintiff argues that the trial court's decision violates her right to privacy under the United States Constitution. In light of our conclusion above, however, we need not reach this issue. Even if the plaintiff's right to privacy gives her the right to choose where to reside with her family, she waived that right by agreeing to the stipulation that was incorporated into the final divorce decree.

We do not address the plaintiff's remaining arguments because we find them to be without merit and not warranting further discussion. *See id.*

*Affirmed.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GROFF, J., superior court justice, specially assigned under RSA

490:3, was recused and did not sit; GRAY, J., retired superior court justice, and MCHUGH, J., superior court justice, sat by special assignment pursuant to RSA 490:3; all who sat concurred.

Justices who did not sit did not, following oral argument, participate in discussions, decisions, votes, or preparation of the opinion in any way.