Salem Family Division
No. 2001-418

IN THE MATTER OF DOROTHY C. LOCKABY AND WILLIAM E. SMITH

Submitted: July 19, 2002
Opinion Issued: October 25, 2002

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief), for the petitioner.

*Perkins & Puckhaber, P.A.*, of Concord (*Diane M. Puckhaber* on the brief), for the respondent.

NADEAU, J. The petitioner, Dorothy C. Lockaby, appeals an order of the Salem Family Division (*Reardon*, J.) denying her motion to modify the visitation rights of the respondent, William E. Smith, by permitting her to relocate to the Commonwealth of Virginia with their two minor children. On appeal, the petitioner contends the trial court's order is an unsustainable exercise of discretion and an improper modification of custody. We reverse and remand.

The record supports the following facts. The parties divorced in September 2000, after a long-term marriage that produced three sons. At that time, the parties' sons were thirteen, sixteen and nineteen years old. Their oldest son was a full-time student at the University of Virginia, while their younger sons were in the eighth and eleventh grades in the Salem School District. In their uncontested divorce, the parties entered into a stipulation regarding their two minor sons' custody, education, support and visitation, which the trial court incorporated into its permanent decree. The parties' stipulation gave them joint legal custody and the petitioner primary physical custody of the boys. It also provided the respondent with liberal visitation rights subject to the children's schedules, including, but not limited to, every other weekend, alternating holidays, and any additional times the boys independently arranged with their father. The parties later agreed to give the respondent one night per week as additional visitation time with the boys.

Since the divorce, the petitioner and her sons have remained in the marital home in Salem, while the respondent has remarried and moved to Bow. The two boys have always attended school in the Salem School District, and both boys are honor roll students with plans to attend college. During their parents' divorce and their visits with the respondent, the boys initially experienced difficulties and discord in their relationships with him.

However, all of the parties sought to improve their relationships with one another and began seeing a counselor to sort out their differences. The children and the respondent soon established a good relationship with regular visits during the week and every other weekend.

In January 2001, three months after the parties' divorce, the petitioner received an employment offer from James Madison University in Harrisonburg, Virginia. The petitioner immediately contacted the respondent by letter to tell him about her job opportunity and to discuss a proposed relocation to Virginia. The same month, the petitioner filed a motion asking the trial court to modify the respondent's visitation schedule to eight weeks of extended visitation throughout the year, which would allow the boys to relocate with the petitioner to Virginia. The petitioner proposed that the respondent have six weeks of visitation in the summer, one week at Christmas, and one week in the spring to spend with his sons. The respondent objected to this proposal and to his sons being moved to Virginia, although he did not oppose the petitioner's individual relocation. He filed a cross-motion to modify custody in the event of the petitioner's relocation, asking the court either to maintain the status quo for custody and visitation, or to grant him physical custody of the two boys.

In May 2001, the trial court held an evidentiary hearing on the parties' motions, receiving offers of proof from the parties and a post-trial letter from the children's counselor. The evidence showed that each of the teenage boys wished to remain with the petitioner, and that the petitioner would give up her job opportunity before she would give up physical custody. While at least one of the boys preferred to stay in Salem with the petitioner, both boys wanted to move to Virginia with her and did not want to live with the respondent and his new wife. The record reflected that the older boy wanted to move to Virginia because it has more appealing educational opportunities and offers him a fresh start, with new people in a new environment. Finally, the boys' counselor opined that the boys would not be harmed by the move and, in fact, such a move would put the boys closer to their brother who is attending school there.

The trial court denied the petitioner's motion and subsequent motion for reconsideration, finding the move was not in the minor children's best interests because it would: (1) remove the boys from their present school system; (2) terminate their current counseling relationship; and (3) significantly interfere with their father's visitation and parental relationship with them. Because the trial court denied the petitioner's motion, thereby maintaining the status quo, it declined to address the respondent's cross-motion to modify custody. This appeal followed.

The petitioner first asks us to apply the analytical framework for custodial relocations set forth in *Ireland v. Ireland*, 717 A.2d 676 (Conn. 1998). *Cf. Tomasko v. DuBuc*, 145 N.H. 169, 171 (2000). While the respondent does not object to an application of the *Ireland* framework to this appeal, neither party below suggested, nor did the trial court apply, this framework. The trial court's decision is based solely upon the best interests of the minor children. Therefore, we decline to apply the *Ireland* standard to this case. *Cf.* RSA 458:23-a (Supp. 2002) (effective July 7, 2002) (adopting standard for application after statute's effective date).

We review the trial court's finding that the petitioner's proposed relocation to Virginia is not in the children's best interests for an unsustainable exercise of discretion. *Tomasko*, 145 N.H. at 172; *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). This means that we review only "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." *Lambert*, 147 N.H. at 296; *see also Tomasko*, 145 N.H. at 172. The trial court's discretion is not unlimited. *Chasan v. Mintz*, 119 N.H. 865, 867 (1979). If the trial court's decision could not reasonably be made upon the record below, it will be overturned. *See id.*; *see also Tomasko*, 145 N.H. at 172.

■ "In visitation matters, the court has continuing jurisdiction to modify arrangements in the best interests of the child." *Chandler v. Bishop*, 142 N.H. 404, 411 (1997). While parents do possess constitutional rights to custody and visitation with their children, the trial court's overriding concern in structuring custody and visitation is the best interests of the child, which may require the court to "circumscrib[e] one or both parents' rights to promote the child's welfare." *Id.* at 412. Although visitation by the non-custodial parent is an important right, it is "one that must yield to the greatest good of the child." *Houde v. Beckmeyer*, 116 N.H. 719, 721 (1976). The trial court's decision must be based upon the best interests of the children, and it "may not be sustained as a means of enforcing the visitation rights of the noncustodial parent." *Webb v. Knudson*, 133 N.H. 665, 672-73 (1990).

The trial court gave three reasons why the petitioner's move was not in the best interests of the children: (1) the relocation would take the boys from a school system and friendships they enjoyed their entire lives; (2) the move would terminate the boys' relationship with their counselor; and (3) the move would substantially interfere with the boys' relationship with the respondent. The first two findings have no support in the record below, and the third finding is an unsustainable basis for denying the motion

because it seeks only to enforce the visitation rights of the respondent, who is the non-custodial parent. *Cf. Knudson*, 133 N.H. at 673.

First, absent from the trial court's order is any deference to the expressed preferences of the two teenage boys. *See Butterick v. Butterick*, 127 N.H. 731, 734-35 (1986). The parties agreed that both boys were intelligent, mature teenagers who could properly articulate their preferences to an independent person. Additionally, both parties and the court agreed that a recommendation from the boys' counselor relating to their best interests and preferences would be helpful to the court's decision on this motion. The trial court, however, issued its order without waiting for the counselor's recommendation and without receiving any input, other than the parties' arguments, on the boys' preferences. Upon receiving the counselor's report with the petitioner's motion for reconsideration, the trial court still gave it no deference, even though it expressed a clear opinion as to the children's best interests and a clear articulation of each boy's preferences.

The counselor reported, consistent with the petitioner's offer of proof at the hearing, that David, the youngest boy, initially opposed a move to Virginia because he enjoyed his friends and school in New Hampshire. However, he since has accepted the move because he wants to continue living with his mother. The report also disclosed that Paul, the older boy entering his senior year of high school, was excited about the move because he has experienced difficulties with people in the Salem school system, the move would offer him a new beginning, and the move would give him more appealing education options. Finally, the counselor's report states:

> Both boys are clear that they wish to reside with their mother. Both boys acknowledge they could regularly visit their father if they lived in VA. They could also see him for longer period[s] of time in the summer months. . . .[T]he boys have always lived with their mother and do not wish to alter that arrangement. In my opinion, the boys would not be harmed by the move, but there would need to be some protection of the father-son involvement. Regular visits and extended visits may allow father and sons to approximate what they have now.
>
> . . . .
>
> Both boys wish to continue their relationship with both parents. A move to Virginia does not change this feeling. Their wish to continue living with their mother, coupled with the

opportunities they expect to have in Virginia, along with being closer to their older brother Michael, who attends the University of Virginia, is a powerful draw. The possibility of living with their father and his [wife] and attending a school where their father resides does not offer the same emotional attraction. They are more comfortable visiting with their father and living with their mother. It remains important for both boys that their parents are able to come to some solution regarding these issues.

This report is consistent with the petitioner's offers of proof at the hearing. Moreover, it reflects the boys' preferences as expressed to an independent counselor, which each party agreed at the hearing should be given deference. *See Butterick*, 127 N.H. at 735.

Second, the trial court's finding that the boys would be taken out of a school system that they enjoy is not consistent with the weight of the evidence and does not explain how the petitioner's proposed relocation is not in the children's best interest. The record reflects that at the time of the hearing, Paul was about to enter his senior year at Salem High School, but he wanted to move to Virginia and go to a new school with different opportunities. The record also shows that David was about to enter his freshman year at Salem High School, which itself would be a new school environment for him. While David initially did not want to move away from his friends in Salem, he accepted the idea because he wanted to remain with his mother and he looked forward to being near his older brother. The record, however, contains no evidence to support the trial court's finding that attending a new school in Virginia is not in the boys' best interests.

Third, there is no evidence in the record that terminating the boys' counseling relationship by moving to Virginia would not be in their best interests. The record reflects that the boys began seeing their counselor to help them through their parents' divorce and to reconcile their relationships with the respondent. The record shows that the counselor accomplished this goal because, by the time of the hearing, the boys shared a good relationship with the respondent and enjoyed regular visits with him. There is no evidence in the record that the counselor planned to continue his relationship with the boys after providing his opinion to the trial court. Furthermore, the counselor's opinion on the boys' relocation does not recommend continued counseling. We conclude that the trial court's second finding is not supported by the record.

Finally, that moving the children to Virginia would interfere with their relationship with their father is self-evident. *See, e.g., Houde*, 116 N.H. at

720-21. However, this fact alone does not explain how this interference is not in the best interests of the children. *Cf. Tomasko*, 145 N.H. at 173. As we recognized in *Tomasko:*

> There are undoubtedly circumstances in which the loss of midweek or every weekend visits necessitated by a distant move may be devastating to the relationship between the noncustodial parent and the child. However, there are undoubtedly also many cases where less frequent but more extended visits over summers and school vacations would be equally conducive, . . . to the maintenance of a close parent-child relationship, since such extended visits give the parties the opportunity to interact in a normalized domestic setting.

*Tomasko*, 145 N.H. at 173 (quotation omitted).

In this case, unlike in *Tomasko*, the trial court made no specific findings to explain why the proposed eight weeks of extended visits would not be equally as conducive to the boys' relationship with the respondent as the present visitation schedule. In fact, the counselor's report seems to indicate the extended visits could maintain the parent-child relationships in this case.

After review of the record, we conclude that the trial court's decision cannot be sustained. There is no objective reason, based upon this record, to uphold the trial court's findings other than to enforce the non-custodial parent's visitation rights. Reliance upon that reason alone, however, constitutes an unsustainable exercise of discretion, which requires this decision to be reversed. *See Knudson*, 133 N.H. at 673. In light of our disposition on this issue, we decline to address the petitioner's remaining arguments.

*Reversed and remanded.*

BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred.