Belknap
No. 2002-076

## IN THE MATTER OF JOANNE PFEUFFER AND GLENN PFEUFFER

Submitted: September 10, 2003
Opinion Issued: November 21, 2003

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* on the brief), for the petitioner.

*Glenn Pfeuffer, pro se*, submitted no brief.

BROCK, C.J. The petitioner, Joanne Pfeuffer, appeals the order of the Superior Court (*Smukler*, J.) denying her motion to modify the custody schedule she shares with the respondent, Glenn Pfeuffer, to permit her relocation to South Carolina with their minor son. We affirm.

The relevant facts follow. Since their 1997 divorce, the parties have shared legal and physical custody of their son. The parties agreed that the respondent would have physical custody of their son on every other weekend, every Wednesday afternoon, and every other week during summer school vacations. The parties agreed that at all other times, the petitioner would have physical custody of their son, except for certain holidays, birthdays and school vacations. The court modified this custodial schedule in 2001 by extending the respondent's custodial time on the weekends.

In August 2001, the petitioner moved to modify the custodial schedule to permit her to relocate to South Carolina, where she had recently found work, and to take the parties' son with her. The petitioner has a horse farm in Laconia. She sought work elsewhere because she could no longer operate the horse farm profitably. After exploring alternatives, the petitioner located a full-time horse trainer job in South Carolina. The respondent objected to modifying the custodial schedule to permit the petitioner to take their son to South Carolina.

The court appointed a guardian ad litem (GAL) who submitted a detailed report in which she opined that relocation would not be in the best interests of the parties' son. To determine whether relocation would serve the son's best interests, the GAL analyzed each of the factors we set forth in *Tomasko v. DuBuc*, 145 N.H. 169 (2000).

The GAL concluded that relocation would impair the ability of both parties to maintain their active involvement in their son's life:

> [T]he current custodial schedule allows each parent to be actively involved in [their son]'s school and recreational life. . . . [The son] enjoys, loves, and needs both parents in order to have the balanced, full life that he enjoys. . . . At the age of eight, he

> apparently needs to see both parents frequently. He does not like to be away from either parent for a significant length of time. . . . Being away from either his father or his mother for an extended period of time would be difficult for [him]. . . . The current ready availability and consistency of each parent in [his] life offer [him] his best opportunity to continue his healthy growth.

The GAL also observed that due to the distance between New Hampshire and South Carolina, the cost of transportation, especially for the respondent, "would be prohibitive." She noted as well that the proposed visitation schedule "would not allow [the respondent] to maintain the existing quality of the relationship he has with [his son]." While the GAL acknowledged that the petitioner's financial situation would require the parties' son to change schools even if he remained in New Hampshire, the GAL continued to be unconvinced that his educational opportunities would be greater in South Carolina than in New Hampshire. "To move him to South Carolina . . . would only further increase his current learning difficulties," she found. Accordingly, the GAL opined that the son's best interests "lie in his remaining in New Hampshire where both parents can maintain their ongoing relationships with him."

Following a hearing at which the parties agreed to be governed by the *Tomasko* factors, the court incorporated and agreed with the GAL's report and "thorough analysis" of each *Tomasko* factor. Noting that some of the *Tomasko* factors favored the petitioner's relocation, while others did not, the court ruled that "[w]hen the factors are examined together . . . in the context of answering the question of what would be in [the son]'s best interest, they strongly weigh against the proposed relocation." Although the GAL discussed each of the *Tomasko* factors in detail, the court discussed only one factor—the effect of the move on the respondent's relationship with his son.

The sole issue for our review is whether the trial court appropriately balanced the *Tomasko* factors. We review the trial court's analysis under our unsustainable exercise of discretion standard. *See Tomasko*, 145 N.H. at 172; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). "This means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." *In the Matter of Lockaby & Smith*, 148 N.H. 462, 465 (2002) (quotation omitted).

In *Tomasko*, we used the analytical framework set forth in *Ireland v. Ireland*, 717 A.2d 676 (Conn. 1998). Under this framework, the custodial parent seeking to relocate has the initial burden of demonstrating, by a

preponderance of the evidence, that the relocation is for a legitimate purpose and is reasonable in light of that purpose. *Tomasko*, 145 N.H. at 171. Once the custodial parent has met this *prima facie* burden, the burden shifts to the noncustodial parent to prove, by a preponderance of the evidence, that relocating is not in the child's best interests. *Id.* at 172; *see also* RSA 458:23-a, IV, V (Supp. 2002) (effective July 7, 2002).

Whether the petitioner met her *prima facie* burden is not at issue. This appeal concerns only whether the trial court properly concluded that the respondent met his burden of showing the relocation was not in the child's best interests.

■ Under *Tomasko*, to determine the child's best interests, the court examines: (1) each parent's reasons for seeking or opposing the move; (2) the quality of the relationships between the child and the parents; (3) the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent; (4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move; (5) the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements; (6) any negative impact from continued or exacerbated hostility between the parents; and (7) the effect that the move may have on extended family relations. *Tomasko*, 145 N.H. at 172.

No one of the above factors may be presumed to be dispositive. *Id.* at 173. Nor are these the exclusive factors bearing upon a determination of a child's best interests. *See id.* In *Tomasko*, we encouraged courts to consider additional suitable factors and to give all factors appropriate weight. *Id.*

■ The petitioner first argues that the trial court committed legal error by giving one *Tomasko* factor undue emphasis. That factor concerned the impact the relocation would have upon the son's future contact with the respondent. This argument oversimplifies the court's analysis.

While the court discussed only one *Tomasko* factor, we do not interpret this as the court relying upon that factor to the exclusion of all others. The court specifically incorporated the GAL's report and analysis, which thoroughly discussed all of the *Tomasko* factors. Its order makes clear that its guiding principle was the child's best interests, not the respondent's. This was entirely appropriate. *See In the Matter of Nelson & Horsley*, 149 N.H. 545, 547 (2003). "While the respective rights of the custodial and noncustodial parents are unquestionably significant factors that must be considered, it is the rights and needs of the children that must be accorded the greatest weight, since they are innocent victims of

their parents' decision to divorce and are the least equipped to handle the stresses of the changing family situation." *Tropea v. Tropea*, 665 N.E.2d 145, 150 (N.Y. 1996) (citation omitted).

■ The petitioner next argues that the record does not support the trial court's conclusion that relocation would substantially interfere with the respondent's relationship with his son. We disagree.

The GAL found that there was "no question that a move to South Carolina would drastically change the relationship that [the child] has with his father." As she explained:

> [The son] is used to seeing his father every week, frequently at school, each Wednesday, and every other weekend for at least three nights. During the summer, [he] sees both parents equally every other week. . . . Although the move to South Carolina might significantly improve [the petitioner]'s economic ability to provide for [the child], it would destroy the close and fun loving relationship that [he] enjoys with [the respondent].

As in *Tomasko*, there was evidence that the respondent was very involved in his son's life. *Tomasko*, 145 N.H. at 173. The GAL reported, for instance, that in addition to scheduled visitation, the respondent participated in almost every school field trip and frequently came to his son's school during the day to share recess with him. The GAL noted also that the respondent organized a soccer team for the school, and volunteered to be the soccer coach and the supervisor of a skiing program for the students.

Based upon this record, we hold that the trial court's conclusion that relocation would substantially interfere with the respondent's relationship with his son was a sustainable exercise of discretion.

We are unpersuaded by the petitioner's attempts to liken this case to *In the Matter of Lockaby & Smith*. In that case, there were no specific findings to explain why the proposed new visitation schedule would not be as conducive to the children's relationship with their father as the old visitation schedule. *Lockaby & Smith*, 148 N.H. at 468. By contrast, the GAL in this case specifically found that the proposed relocation and changed visitation schedule "would destroy the close and fun loving relationship" between the respondent and his son. *See Tomasko*, 145 N.H. at 173.

The petitioner asserts that the court erroneously failed to require the respondent to show "that the reduction or change in visitation due to the relocation is of such a degree that the parent-child relationship cannot be

maintained." This was not the respondent's burden. His burden was to show that relocation would not be in the son's best interests. *See id.* at 172.

■ The petitioner next argues that the trial court erroneously weighed the *Tomasko* factors together. She contends that the trial court should have considered each factor in isolation and determined the extent to which it favored relocation. We find no error in the trial court's decision to weigh the factors as a whole to determine whether they show that relocation was in the child's best interests. *Tomasko* does not mandate that a court consider each factor individually and separately. *See Azia v. Dilascia*, 780 A.2d 992, 1000 (Conn. App. Ct. 2001).

The petitioner argues that each *Tomasko* factor is either neutral or supports her decision to relocate and, on balance, all of them support relocation. We disagree. We will affirm the trial court if, as in this case, the record establishes an objective basis sufficient to sustain the discretionary judgment made. *See Lockaby & Smith*, 148 N.H. at 465. Given the GAL's report upon which the trial court relied, we hold that the court's conclusion that relocation was not in the son's best interests was a sustainable exercise of discretion.

*Affirmed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.