Derry Family Division
No. 2009-305

IN THE MATTER OF ERIC W. HEINRICH AND MARY ELLEN CUROTTO

Argued: April 22, 2010
Opinion Issued: September 17, 2010

*Victor W. Dahar, P.A.*, of Manchester (*Eleanor Wm. Dahar* on the brief and orally), for the respondent.

*Brian G. Germaine, P.A.*, of Derry (*Brian G. Germaine* on the brief and orally), for the petitioner.

HICKS, J. The respondent, Mary Ellen Curotto (wife), appeals the final divorce decree issued by the Derry Family Division (*Moore*, J.), which denied her request to relocate to Florida with the three minor children from her marriage to the petitioner, Eric W. Heinrich (husband). She also contends that the court erred in ruling that the husband was entitled to reimbursement for an overpayment of child support and by requiring that the children be in the care of a third-party caretaker for more than forty-eight hours before the other parent is offered the right to care for them. We affirm in part, vacate in part, and remand.

The record supports the following facts. The parties married in Florida in December 1996 and have three minor sons born in 2000, 2002 and 2004. During their twelve-year marriage, the parties moved from Florida to New Hampshire, following employment opportunities for the husband, who

works as a professional chef. The wife worked part-time in the hospitality industry as a waitress and bartender. In 2002, the parties relocated to Derry where two of their three sons were born. According to the wife, the parties' stay in New Hampshire was to be temporary, no longer than five years, after which they intended to return to Florida. The husband disputes this.

On November 10, 2006, the husband filed for divorce, alleging that irreconcilable differences between the parties caused an irremediable breakdown of the marriage. The wife filed an answer and cross-motion to petition for divorce on March 11, 2007. In this petition, the wife asked the court to award her primary residential responsibility for the children so that she could "relocate the children to the State of Florida." The wife's extended family lives in the St. Petersburg, Florida area and owns and operates the Bon-Aire Motel on St. Petersburg Beach. Her family offered her a position as assistant general manager of the hotel with a number of benefits, including health insurance and a flexible work schedule to take care of the children. The husband opposed this move, primarily because he did not believe it was in the children's best interests. The children would not be able to see him weekly and would have to move from the only home they have known.

On April 5, 2007, a Marital Master (*Cross*, M.) held a hearing and issued a temporary parenting plan that gave primary residential responsibility to the wife but awarded the husband regular parenting time. The parenting plan provided that RSA 461-A:12 (Supp. 2009), entitled "Relocation of a Residence of a Child," would govern any proposed relocation. "Pending agreement or further order," the court also barred relocation outside of New Hampshire and appointed a guardian ad litem (GAL) to study, among other issues, whether relocation would be in the children's best interests. In August 2007, the GAL submitted a detailed preliminary report in which she reported that "the children are strongly bonded to both parents," that both "are good parents," and that the children would "suffer a loss" if they were separated from either parent. Based upon this report, the trial court partially modified the existing temporary parenting plan giving the father greater parenting time and denied the wife's request to relocate temporarily to Florida with the children.

At the final hearing, the parties presented the court with two separately negotiated and agreed to parenting plans, one based upon the children's residence in New Hampshire and the other based upon their residence in Florida. The parties disagreed as to whether the wife should relocate with the children to Florida and as to which legal standard governed this proposed relocation — the best interests of the child standard set forth in RSA 461-A:4 (Supp. 2009) and RSA 461-A:6 (Supp. 2009) or the burden-

shifting standard set forth in RSA 461-A:12. To decide these issues, the trial court heard testimony from the parties and witnesses and considered the GAL's final report. In her final report, the GAL analyzed the proposed relocation request and recommended that it be denied and "that the children remain in New Hampshire with both parents." The trial court agreed.

In March 2009, the trial court issued a final order, denying the wife's request to relocate to Florida based upon the burden-shifting standard set forth in RSA 461-A:12. The trial court found that the wife had demonstrated a legitimate reason for the proposed relocation to Florida — she had a unique job opportunity in her family's business as well as an extended family network that would help her raise the children in Florida. The trial court then applied the factors set forth in *Tomasko v. DuBuc*, 145 N.H. 169 (2000), to determine whether the proposed relocation was in the sons' best interests. The court found that:

> the [wife] has not resided in the State of Florida for quite some time, that the parties have resided in the State of New Hampshire for over six years, two of their children have been born in this State, all three children have known no other home other than their home in Derry, New Hampshire, the children are well acclimated to the Derry area, the local schools and the community, and the [better] quality of life argument raised by the [wife] does not overcome the negative impact to the quality of the [husband's] relationship with the parties' minor children if the [wife were] to relocate to Florida.

The court noted that the husband was "an involved father" and that his family "has bonded" with the children. If the children relocated to Florida, the court observed that the husband's parenting time with the children would "noticeab[ly] decrease" and that the children "will suffer a loss." (Quotation omitted.) Therefore, the trial court denied the wife's request to relocate and found that the New Hampshire parenting plan should apply. The wife filed a motion for reconsideration, which the court denied. This appeal followed.

The wife first argues that the trial court erred when it applied RSA 461-A:12 in denying her petition to relocate with the children to Florida. She contends that RSA 461-A:12 applies only to a post-divorce relocation request to modify an existing permanent parenting decree. Here, she asserts, there was no permanent parenting decree in place, and, therefore, the court should have applied the best interests of the child standard set forth in RSA 461-A:4 and RSA 461-A:6.

The wife's argument requires us to construe the pertinent statutes. The interpretation of a statute is a question of law, which we review *de novo*. *Kenison v. Dubois*, 152 N.H. 448, 451 (2005). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Id.* When the language of a statute is clear on its face, its meaning is not subject to modification. *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005). We will neither consider what the legislature might have said nor add words that it did not see fit to include. *Id.*

RSA 461-A:4 governs parenting plans and the determination of parental rights and responsibilities. It directs that "[i]n developing a parenting plan under this section, the court shall consider only the best interests of the child as provided under RSA 461-A:6 and the safety of the parties." RSA 461-A:4, I. RSA 461-A:4, II states that a parenting plan may include provisions relative to "[d]ecision-making responsibility and residential responsibility" for the children, "[p]arenting schedule," as well as the "[r]elocation of parents" among other matters. RSA 461-A:4, II. RSA 461-A:4, in conjunction with RSA 461-A:6, does not specifically address the relocation of a residence of a child. RSA 461-A:12, however, does.

██ ██ RSA 461-A:12, V-VI, lays out a two-part test, known as the burden-shifting test, for a court to apply if a parent seeks to relocate the residence of a child. Under this test, the parent petitioning for relocation must demonstrate that the relocation is for a legitimate purpose and is reasonable in light of that purpose. RSA 461-A:12, V. If the petitioning parent meets this burden, the opposing party then has the burden of proving that the relocation is not in the best interests of the child. RSA 461-A:12, VI. RSA 461-A:12 states:

> I. This section shall apply if the existing parenting plan, order on parental rights and responsibilities, or other enforceable agreement between the parties does not expressly govern the relocation issue. This section shall not apply if the relocation results in the residence being closer to the other parent or to any location within the child's current school district.

> II. This section shall apply to the relocation of any residence in which the child resides at least 150 days a year.

RSA 461-A:12, I, II. Nothing in RSA 461-A:12 purports to limit its applicability to relocations proposed after a final divorce decree has been entered, and we decline to read in such a limitation. It is a well settled rule that to the extent that two statutes conflict, the more specific statute, here

RSA 461-A:12, controls over the general statute, RSA 461-A:4. *Favazza v. Braley*, 160 N.H. 349, 352 (2010). RSA 461-A:4, the general parenting plan statute, lists as one possible provision the "[r]elocation of parents." RSA 461-A:4, II(f). It does not provide any detail as to relocation of the children as RSA 461-A:12 does.

The wife next argues that the trial court unsustainably exercised its discretion in denying her request to relocate to Florida with the children under RSA 461-A:12. Specifically, she contends that the trial court "failed to give proper weight to evidence and testimony proffered by [her] relative to the opportunities" available to the children in Florida. These opportunities include the ability of the children to attend private school, participate in their family's hotel legacy, and attend monthly scheduled parenting time with their father. The wife further asserts that she would be able to provide a better lifestyle for the children in Florida than in New Hampshire and that the parties had agreed to move from New Hampshire to Florida after five years. By ignoring these factors, the trial court placed too much emphasis on how the relocation would negatively affect the husband's relationship and parenting time with the children. She asserts there would be no negative effect; the husband would have the same quality of parenting time whether the children live in New Hampshire or Florida.

As previously stated, RSA 461-A:12 provides the analytical framework to determine whether relocation is warranted. Under RSA 461-A:12, the parent seeking to relocate has the initial burden of demonstrating, by a preponderance of the evidence, that the relocation is for a legitimate purpose and is reasonable in light of that purpose. RSA 461-A:12, V. Once the parent has met this *prima facie* burden, the burden shifts to the other parent to prove, by a preponderance of the evidence, that relocating is not in the child's best interests. RSA 461-A:12, VI.

Whether the wife met her *prima facie* burden is not at issue here. This appeal concerns only whether the trial court properly concluded that the father met his burden of showing the relocation was not in the children's best interests. We review the trial court's analysis under our unsustainable exercise of discretion standard. *See Tomasko*, 145 N.H. at 172; *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). "This means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." *In the Matter of Lockaby & Smith*, 148 N.H. 462, 465 (2002) (quotation omitted).

Here, the trial court, after reviewing the GAL's final report, hearing testimony from witnesses, and listening to the parties and reading their written submissions, found that the father had established that a relocation

to Florida was not in the children's best interests. In reaching this conclusion, the trial court carefully analyzed each of the factors listed in *Tomasko*. These factors include:

> (1) each parent's reasons for seeking or opposing the move; (2) the quality of the relationships between the child and the custodial and noncustodial parents; (3) the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent; (4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally, and educationally by the move; (5) the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements; (6) any negative impact from continued or exacerbated hostility between the custodial and noncustodial parents; and (7) the effect that the move may have on any extended family relations.

*Tomasko*, 145 N.H. at 172.

The trial court focused upon how the relocation would affect the quality of the relationship of the husband, "an involved father," with his children. The court found that this relationship would suffer because the husband's "day to day contact with the parties' minor children will be eliminated." Under the proposed Florida plan, the husband's contact would be limited to three-day weekends, major holidays and the summer, a time period the court noted that the husband "will not be able to take advantage of given[] his employment" as a chef. The court also worried that the Florida parenting plan "would require significant air travel, which involves a cost factor that the parties may or may not be able to realistically afford, as well as requiring the parties to effectively communicate, which they have been unable to do so to date." Finally, the court noted that the children are "well acclimated to the Derry area, the local schools and the community."

The wife asserts that these factors are far outweighed by the economic, emotional, and educational benefits of the move. She would have a flexible lucrative career with family support and the children could attend private school in Florida. The trial court addressed this argument, stating at the hearing, "I fully understand. Your client wants to relocate to Florida because she is offered a job that she could not obtain in New Hampshire. She could not get a job with the same benefits . . . and she feels that being with her family and having her family support is in her children's best interest." But the trial court found that the "quality of life argument raised by the [wife] does not overcome the negative impact to the quality of the [husband's] relationship with the parties' minor children if the [wife were] to relocate to Florida."

■ The record supports the trial court's findings. There is evidence that the husband was an involved, caring father. His family gathers together regularly at his parents' house on Sundays to relax, play games, and swim. He is involved in extra-curricular activities as an assistant coach, helps the children with their homework, and attends school activities. The GAL noted that there are times when the husband could not exercise his parenting time because of his work schedule and relies upon a third party for day care. Nevertheless, the GAL opined that she believed it was important for the children "to have . . . access to their dad" regularly. The GAL noted in her report that while the Florida parenting plan would allow the husband and children "to maintain *a* relationship, . . . it will not be the same type of relationship, which exists now. The reality is that the ability to have day to day contact with the boys will be eliminated." She concluded that the boys "will suffer a loss."

We are unpersuaded by the wife's attempts to liken this case to *Zaleski v. Zaleski*, 513 N.Y.S.2d 784 (App. Div.), *appeal denied* 512 N.E. 2d 552 (N.Y. 1987). In *Zaleski,* an appellate court upheld the trial court's grant of a mother's petition to relocate intrastate from Long Island to Syracuse, New York, in order for her new husband to pursue a unique employment opportunity in "an on-going family concern." *Zaleski,* 513 N.Y.S.2d at 786. Because the wife had proposed a liberal visitation schedule and the parties had communicated well, the court concluded that the intrastate relocation "will not . . . effectively curtail the visitation rights of the father or deprive him of regular access to the children." *Id.* In comparison, here the wife has proposed an interstate move of great distance, the parties have had difficulty communicating, and the proposed visitation schedule would greatly limit the father's parenting time with the children.

■ The wife also asserts that the trial court should not have relied upon the GAL's report and testimony because the GAL's "[p]ersonal '[p]hilosophy' [i]nterfered with her [r]ecommendations." Specifically, the wife contends that the GAL's support of third-party care and working mothers unacceptably influenced her report. "[T]he recommendations of a GAL do not, and should not, carry any greater presumptive weight than the other evidence in a case." *In the Matter of Choy & Choy,* 154 N.H. 707, 714 (2007). The trial court here did not rely solely upon the GAL's report. The court considered the testimony of both parties and their witnesses, and the submitted documents. Further, the trial court did not commit an unsustainable exercise of discretion by relying upon the GAL's report. At the hearing, the GAL acknowledged her difference of opinion as to third-party care, stating:

> I think of [third-party care] as . . . a necessary evil, and you know, so many people have to, and you do the best you can to keep your children safe when you have to utilize [it].
>
> [The wife] doesn't want to utilize it at all . . . . I respect [that]; I just don't agree with it.

The trial court, therefore, was able to consider these differences in philosophy and to weigh the GAL's report accordingly. We defer to the judgment of the trial court in these matters because a trial court is in the best position to assign weight to evidence and to assess the credibility of witnesses. *In re Guardianship of E.L.*, 154 N.H. 292, 296 (2006).

Based upon our review of the record, we cannot say that the trial court unsustainably exercised its discretion in finding that it would not be in the children's best interests to relocate to Florida. *See In the Matter of Pfeuffer & Pfeuffer*, 150 N.H. 257, 260-62 (2003); *Tomasko*, 145 N.H. at 173-75. We, therefore, affirm the trial court's ruling.

Next, the wife contends that the trial court erred in ruling that the husband was entitled to reimbursement of $2,472 spread over twelve months. The parties do not dispute that the husband overpaid child support from January 2008. Prior to the final hearing, the parties submitted that all overpayments had been settled by their partial permanent stipulation through November 1, 2008. The court needed to calculate only overpayments after November 2, 2008. The court, however, incorrectly calculated overpayments for the entire period. We vacate and remand for recalculation of the overpayments.

Finally, the wife asserts that the trial court unsustainably exercised its discretion in requiring the children to be in the care of a third-party caretaker for greater than forty-eight hours before the other parent is offered the right to care for the children. She proposes that a six-hour or shorter time period is more acceptable. Based upon our review of the record, we cannot say that the trial court unsustainably exercised its discretion in imposing a forty-eight hour period.

> *Affirmed in part; vacated in part; and remanded.*

BRODERICK, C.J., and DUGGAN and CONBOY, JJ., concurred; DALIANIS, J., concurred specially.

DALIANIS, J., concurring specially. While I concur in the court's opinion because of our deferential standard of review, and agree that RSA 461-A:12 (Supp. 2009) governs the petition of the respondent, Mary Ellen Curotto

(wife), to relocate with the children to Florida, I write separately to express my concern about how the trial court applied this statute to the facts of this case.

Under RSA 461-A:12, a parent seeking to relocate has the initial burden of demonstrating, by a preponderance of the evidence, that the relocation is for a legitimate purpose and is reasonable in light of that purpose. RSA 461-A:12, V. Once the parent has met this *prima facie* burden, the burden shifts to the other parent to prove, by a preponderance of the evidence that relocating is not in the child's best interests. RSA 461-A:12, VI.

In this case, the parties do not dispute that the respondent met her *prima facie* burden. The only issue is whether the petitioner, Eric W. Heinrich (husband), met his burden of.proving that it was not in the children's best interest to relocate to Florida. In making this determination, the trial court properly examined the factors set forth in *Tomasko v. Dubuc*, 145 N.H. 169, 172 (2000), which include:

> (1) each parent's reasons for seeking or opposing the move; (2) the quality of the relationships between the child and the custodial and noncustodial parents; (3) the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent; (4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally, and educationally by the move; (5) the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements; (6) any negative impact from continued or exacerbated hostility between the custodial and noncustodial parents; and (7) the effect that the move may have on any extended family relations.

The trial court's analysis focused upon factor (3), the move's impact upon the children's future contact with their father, and factor (4), whether the move would enhance their emotional, financial and educational lives. Although there was evidence that relocation would have greatly enhanced the children's lives (their mother would have had a lucrative job, they would have lived near extended family and been able to attend private school), the trial court denied the wife's request to relocate, to my mind, principally because, if she moved, the husband's time with the children would "noticeab[ly] decrease." I find this troubling. If an involved parent's regular contact with his or her children is sufficient, in and of itself, to bar the other parent's reasonable request to relocate for legitimate reasons, will it ever be possible for one parent to relocate when the other parent is thoroughly involved in the children's lives?