# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0430, <u>In the Matter of Shalyn McFadden and Jerry Landry</u>, the court on April 25, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order.  <u>See Sup. Ct. R.</u> 20(2).  The petitioner, Shalyn McFadden (Mother), and the respondent, Jerry Landry (Father), are the unmarried parents of a young child.  In March 2022, the parties submitted a partial parenting plan to which they both agreed.  Following a hearing on offers of proof, the Circuit Court (<u>Joseph</u>, J.) issued an order resolving issues that remained in dispute, which Mother now appeals.  On appeal, Mother argues that the trial court unsustainably exercised its discretion and/or erred as a matter of law by: (1) finding that she lacked a legitimate reason for relocating from Manchester to Massachusetts; (2) deciding that the child would attend Manchester schools; and (3) starting the final hearing twenty minutes after its scheduled time, even though neither she nor her attorney was yet present.  We affirm.

The trial court has broad discretion in matters involving parenting rights and responsibilities.  <u>In the Matter of Miller & Todd</u>, 161 N.H. 630, 640 (2011).  Its overriding concern in such matters is the best interest of the child.  <u>Id</u>.  We will not overturn the trial court's decision on a parenting petition absent an unsustainable exercise of discretion.  <u>Id</u>.  This standard of review means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made.  <u>Id</u>.  We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence.  <u>O'Malley v. Little</u>, 170 N.H. 272, 275 (2017).  We will not disturb the trial court's factual findings unless they are unsupported by the evidence or legally erroneous.  <u>In the Matter of Nyhan and Nyhan</u>, 147 N.H. 768, 770 (2002).

## I.  Relocation

In December 2021, Mother filed an emergency motion, seeking permission to relocate from Manchester, where the parties both lived, to Tyngsboro, Massachusetts, to which Father objected; the motion was scheduled for hearing on March 24, 2022.  Mother has not included her emergency motion or Father's objection thereto in her appendix.

The parties attended mediation in January 2022 and agreed to several items, but notably, did not agree that Mother could relocate to Massachusetts with the child. She did so anyway. Because Mother moved without court permission, knowing that relocation was a disputed issue and that the court was going to hold a hearing on the matter in March 2022, the trial court held her in contempt.

The trial court then examined whether to approve Mother's relocation, after the fact, under RSA 461-A:12. See RSA 461-A:12 (Supp. 2022). To obtain court approval of a relocation, the relocating parent must prove, by a preponderance of evidence, that the relocation is for a legitimate purpose and is reasonable in light of that purpose. RSA 461-A:12, V; see In the Matter of St. Pierre & Thatcher, 172 N.H. 209, 221-22 (2019). Once the relocating parent has carried that burden, the burden shifts to the other parent to prove that the relocation is not in the child's best interest. RSA 461-A:12, VI; see In the Matter of St. Pierre & Thatcher, 172 N.H. at 222. If both parents agree to the relocation, the trial court "may modify the allocation or schedule of parenting time or both based on a finding that the change is in the best interests of the child." RSA 461-A:12, IX.

Based upon all of the evidence presented, the trial court found that Mother failed to prove, by a preponderance of the evidence, that she moved to Massachusetts for a legitimate purpose. The trial court reasoned that Mother's decision to move, despite Father's objection to the move and even though the court had not yet heard her motion requesting permission to move, supported its finding that she lacked a legitimate purpose.

The trial court's determination that Mother lacked a legitimate purpose was also partially based upon its finding that she had a continued desire to interfere in the relationship between Father and the child. See Tomasko v. Dubuc, 145 N.H. 169, 171 (2000). The trial court found "significant evidence to support Father's claim that Mother's behavior reflects her continued desire to interfere in his relationship with" the child, noting that the court's file was "replete with pleadings in which Mother sought to prevent or complicate Father's parenting time." Even though the trial court found that Mother lacked a legitimate purpose to relocate and that she "achieved a de facto relocation by selling her home and moving in with her parents absent a prior Court order," the court approved the routine schedule to which the parties had agreed in mediation and did not require Mother to return to Manchester.

On appeal, Mother argues that the trial court erroneously found that she lacked a legitimate purpose for relocating. She first asserts that the trial court misinterpreted Tomasko. We disagree.

2

In Tomasko, we set forth the framework that the court in Ireland v. Ireland, 717 A.2d 676 (Conn. 1998), used to analyze a request by a custodial parent to relocate with a child. Tomasko, 145 N.H. at 171-72. In discussing what a legitimate purpose might be for relocating, we observed that the Ireland court did not define a "legitimate purpose," but instead gave examples of what were and were not legitimate purposes. Id. at 171. We noted that, according to the Ireland court, "a finding that the relocating parent has improper motives, such as a vindictive desire to interfere in the relationship between the noncustodial parent and the children, would support a ruling that the relocating parent lacked a legitimate purpose." Id. (quotation and brackets omitted).

Mother contends that, for the trial court to find that she had an improper motive for relocating, the trial court had to find that she was primarily motivated by her desire to interfere with Father's relationship with the child. She also argues that the Tomasko test is forward looking, and that by looking at her "alleged history of disrupting [Father's] relationship with the Child," the trial court erred as a matter of law. And, she argues that "[a] party's alleged intention to interfere with the other parent's relationship with the Child is considered an illegitimate purpose for relocating, but is not a factor used to determine whether the relocating party had a legitimate purpose to relocate." These assertions find no support in Tomasko. We are unpersuaded by Mother's arguments that the trial court misinterpreted and misapplied Tomasko.

Mother next argues that the trial court "overlooked the . . . considerable evidence supporting [a finding] that [her] financial distress constituted a legitimate purpose to relocate." The evidence before the trial court was conflicting, however, and we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. O'Malley, 170 N.H. at 275.

II. School District

Father proposed that the child should attend school in the Manchester school district, and Mother proposed that the child attend school in the Tyngsboro school district. The trial court determined that it is in the child's best interest to attend Manchester schools because the child has lived in Manchester for nearly her entire life and will continue to be in Manchester during Father's parenting time and because "both parents have resided in Manchester since the child's birth and [previously had] agreed that it would be good for [the child]." The court noted that Mother's counsel had conceded that Mother did not move so as to afford the child a better education. The court further observed that Mother told Father in October 2021 that the Catholic school near his home would afford the child an "amazing education." Because

3

there is evidence in the record to support these findings, we uphold them.  See In the Matter of Nyhan and Nyhan, 147 N.H. at 770.

Based upon these findings, the trial court reasonably determined that it is in the child's best interest to attend Manchester schools.  Although Mother argues that the trial court should have found it to be in the child's best interest to attend Tyngsboro schools, her arguments essentially ask us to reweigh the evidence, which is not our role on appeal.  See O'Malley, 170 N.H. at 275.

III.  Due Process

The final hearing in this case was scheduled for two hours, beginning at 1:00 p.m.  After waiting twenty minutes for Mother and her counsel to arrive, the court began the hearing by asking Father's counsel to identify the issues the parties mediated and those that remained in dispute.  Father's counsel then began by reviewing her exhibits with the trial court and making an offer of proof.  Mother and her counsel arrived approximately fifteen minutes later. Mother's counsel acknowledged that the hearing had been noticed for 1:00 p.m., and explained that she had mistakenly thought it began at 2:00 p.m. The trial court informed counsel of what had transpired in her absence and confirmed the issues remaining in dispute and that the parties had agreed to proceed by offers of proof.  Father's counsel then continued with her offer of proof regarding her exhibits.  The trial court admitted all of Father's exhibits into evidence to which Mother's counsel had no objection.  Mother's counsel was then allowed to give an offer of proof and submit exhibits.

Mother filed a timely motion to reconsider arguing a single issue — that the trial court had erred by finding that her "relocation was not for a legitimate purpose."  The trial court denied Mother's motion in a margin order, and this appeal followed.

A few days before filing this appeal, and after the trial court had denied Mother's timely motion for reconsideration, Mother filed a motion asking the court to vacate the final parenting plan and schedule a new hearing in the matter.  In that motion, Mother argued, for the first time, that the trial court had violated her procedural due process rights, as guaranteed by the State Constitution, by starting the hearing before she and her counsel were present and by proceeding with offers of proof.  Mother filed this appeal before the trial court had ruled on her motion for a new trial.

Mother now reiterates her procedural due process arguments on appeal. Father contends that these arguments are not properly before us, and we agree.  Mother's late-filed motion for a new trial is insufficient, under the circumstances, to preserve her due process claims for our review in this appeal.

4

To preserve an argument for appellate review, we generally require issues to be raised at the earliest possible time because trial forums should have a full opportunity to come to sound conclusions and correct errors in the first instance. Bedford Sch. Dist. v. State of N.H., 171 N.H. 246, 250 (2018). This is only fair to the parties, the trial forums, and the appellate court. Cogswell Farm Condo. Ass'n v. Tower Group, Inc., 167 N.H. 245, 253 (2015).

Here, Mother did not object at the final hearing to the fact that the court had started the hearing when she and her attorney were not yet present, and her attorney specifically agreed to proceed by offers of proof. Although Mother filed a timely motion to reconsider, she did not raise due process as an issue, and she filed her appeal before the trial court had ruled on her motion for a new trial, effectively vesting this court with exclusive jurisdiction over the subject matter of the appeal. See Rautenberg v. Munnis, 107 N.H. 446, 447 (1966). Under these circumstances, we conclude that Mother did not preserve her due process claims for our review and, on that basis, we decline to consider them. Cf. Transmedia Restaurant Co. v. Devereaux, 149 N.H. 454, 459 (2003) (concluding that the plaintiff's motion, filed nearly two months after the trial had concluded, was insufficient, as a matter of law, to preserve its argument regarding jury instructions for appellate review); Broderick v. Watts, 136 N.H. 153, 170 (1992) ("If an objection [to jury instructions] is first raised in a post-trial motion that is filed several days after the conclusion of the trial, the objection is not timely regardless of whether it is well founded.").

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

5