Concord Family Division
No. 2009-556

IN THE MATTER OF PATRICIA MARTIN AND MICHAEL MARTIN

Argued: June 10, 2010
Opinion Issued: August 19, 2010

*Daniel C. Proctor*, of Concord, by brief and orally, for the petitioner.

*Puckhaber Law Offices, PLLC*, of Concord (*Diane M. Puckhaber* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, Patricia Martin (mother), appeals an order of the Concord Family Division (*Gordon*, J.) approving the final decree of divorce from the respondent, Michael Martin (father), recommended by the Marital Master (*Rein*, M.). The mother also appeals an order of the Family Division (*Carbon*, J.) approving the marital master's denial of her motion to reconsider. We affirm.

The record supports the following relevant facts. The parties met in 2002 and were married in 2004. They are the parents of a son, who was born in June 2007. Shortly after their son was born, the mother discovered that the father had been having an affair.

The mother filed for divorce in September 2007. As part of the divorce proceedings, the mother sought permission to relocate with the son to Rhode Island where her parents live. The family division denied her request, stating in the parenting plan attached to the final decree that the mother "is not permitted to remove [the son]'s residence from the State of New Hampshire and to a location farther away from [the father]'s residence than is her current residence in Derry." The parenting plan established a rotating parenting schedule to coincide with the father's rotating work schedule. In addition, it included a provision regarding future parenting disagreements, stating:

> In the future, if the parents have a disagreement about parenting issues, the parents shall try to work it out in the best interest of the child(ren). If the parents are unable to work out the disagreement, they shall seek the help of a neutral third party to assist them. Only if the parents are unable to work out the disagreement after seeking third party assistance will they ask the court to decide the issue.

The mother moved for reconsideration of rulings in the final decree relevant to relocation, the parenting schedule and the future disagreements provision, which the family division denied. On appeal, the mother argues that the trial court erred by: (1) denying her request to relocate; (2)

instituting the rotating parenting schedule; and (3) mandating neutral third party assistance before instituting further legal proceedings with respect to future parenting disagreements. At oral argument, the mother conceded that the rotating parenting schedule issue is now moot because the father's work schedule has changed. Accordingly, we address only the mother's arguments concerning relocation and the future parenting disagreements provision.

## I. Relocation

The mother argues that the trial court erred by denying her request for permission to relocate because it incorrectly interpreted and applied RSA 461-A:12 (Supp. 2009), the statute that the parties agree governs this issue. RSA 461-A:12, V provides, in relevant part that:

> The parent seeking permission to relocate bears the initial burden of demonstrating, by a preponderance of the evidence, that:
> (a) The relocation is for a legitimate purpose; and
> (b) The proposed location is reasonable in light of that purpose.

The statute further provides that "[i]f the burden of proof established in paragraph V is met, the burden shifts to the other parent to prove, by a preponderance of the evidence, that the proposed relocation is not in the best interest of the child." RSA 461-A:12, VI.

When determining matters of child custody, a trial court's overriding concern is the best interest of the child. *In the Matter of Mannion & Mannion*, 155 N.H. 52, 55 (2007). In doing so, the trial court has wide discretion, and we will not overturn its determination unless there has been an unsustainable exercise of discretion. *Id.* This means that we review the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgment. *Id.* The trial court's determination in any custody case depends to a large extent upon the firsthand assessment of the credibility of witnesses, as well as the character and temperament of the parents, and the findings of the trial court are binding upon this court if supported by the evidence. *Id.*

Resolving the issue in this appeal, however, also requires that we interpret RSA 461-A:12. We review a trial court's statutory interpretation *de novo. See In the Matter of Choy & Choy*, 154 N.H. 707, 711 (2007). In matters of statutory interpretation, we are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *In the Matter of Carr & Edmunds*, 156 N.H. 498, 503-04 (2007). We begin our analysis by looking to the language of the statute itself. *In the*

*Matter of LaRue & Bedard*, 156 N.H. 378, 380 (2007). In examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *In the Matter of Carr & Edmonds*, 156 N.H. at 504. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* If the language is plain and unambiguous, then we need not look beyond it for further indication of legislative intent. *In the Matter of LaRue & Bedard*, 156 N.H. at 380. We interpret a statute in the context of the overall statutory scheme and not in isolation. *In the Matter of Carr & Edmonds*, 156 N.H. at 504.

Pursuant to its plain meaning, RSA 461-A:12, V requires that in this case, the mother must demonstrate, by a preponderance of the evidence, that her request to relocate is for a legitimate purpose and that the proposed location, Rhode Island, is reasonable in light of that purpose. Neither party argues that the statute is ambiguous. We, therefore, need not look beyond it for further indication of legislative intent. *In the Matter of LaRue & Bedard*, 156 N.H. at 380.

The trial court found that the "primary reason [the mother] wants to move is to avoid ongoing interaction with the father" and to "get away from [him]." It also found that there was "no evidence that [the father] is any threat to [the mother], or that he has conducted himself in a way as to cause her to fear [for] her safety." These findings are supported by evidence, including the mother's own testimony and the report of the guardian ad litem, and are, accordingly, binding upon us. *In the Matter of Mannion & Mannion*, 155 N.H. at 55.

The mother argues that the statutory term "legitimate" means only that she must set forth a subjectively legitimate reason for wanting to relocate, and that the court must then consider whether Rhode Island is an objectively reasonable location. She contends that her needs for emotional and financial support from her Rhode Island family constitute subjectively legitimate reasons under the statute. Assuming, without deciding, that the mother's interpretation of "legitimate" is correct, her argument still fails.

While the mother testified that she sought to relocate to receive financial and emotional support from her family, the trial court found that the relocation would not result in an improvement to her financial status. Specifically, it noted that she currently has full time employment in New Hampshire but no comparable job prospects in Rhode Island. With respect to emotional support, the mother's counseling records, submitted in the appendix to her brief, indicate that she has not had a strong relationship with her parents in the past.

■ As noted above, the trial court found that the primary reason she wants to move is to avoid ongoing interaction with the father and to get away from him. The mother does not argue that the trial court erred as a matter of law in concluding that wanting to "get away" is *not* a legitimate reason. Thus, even if we accept the mother's definition of "legitimate" as a subjective determination, upon the facts of this case, she cannot prevail, and we need not further address her argument.

In light of the trial court's findings, we agree with its legal conclusion that the mother failed to carry her burden of demonstrating that she seeks relocation for a legitimate purpose. Therefore, we need not consider whether Rhode Island is a reasonable location, *see* RSA 461-A:12, V(b), nor need we consider whether the father has proved, by a preponderance of the evidence, that relocating to Rhode Island is not in the son's best interest, *see* RSA 461-A:12, VI.

## II. Future Parenting Disagreements

The mother argues that the parenting plan provision stating that the parents "shall seek the help of a neutral third party" before petitioning the court in the event of future disagreements about parenting issues violates her constitutional rights to due process and access to the courts. *See* N.H. CONST. pt. I, art. 14; U.S. CONST. amend. XIV. She contends that the compulsory word "shall" bars the parties from accessing the courts and restricts her rights to seek judicial relief for her grievances. She further argues that due process requires that she "be provided with the opportunity of an initial hearing and access to the courts, before being sent to a 'third party process.' " We first address her claims under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ Due process under Part I, Article 14 "provides that all citizens have a right to the redress of their actionable injuries." *Gould v. Concord Hospital*, 126 N.H. 405, 409 (1985). "The article does not prohibit all impairments of the right of access to the courts." *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 665 (1979), *appeal dismissed*, 445 U.S. 921 (1980). "Reasonable regulations regarding the commencement of suits do not automatically violate the constitutional guaranty that justice will be administered promptly." *Opinion of the Justices (Limitation of Civil Actions)*, 137 N.H. 260, 269 (1993).

■ We cannot accept the mother's contention that the provision at issue bars judicial relief for future parenting disagreements. The provision at issue neither infringes upon nor denies that right. It imposes no specific requirement that the assistance of a neutral third party must be of any

particular nature or duration or even that the third party must have actually provided assistance. It permits either party to seek judicial relief, as long as that party demonstrates that the parents first sought the assistance of a neutral third party. Thus, the mother's concern that one parent could use this provision to cause undue delay is not supported by its plain meaning. *Cf. Opinion of the Justices*, 137 N.H. at 269 ("[W]e do not rule out the possibility that the lapse of time inherent in extended litigation could rise to a constitutional violation in a given case."). Similarly, because we conclude that the provision has no deleterious effect upon the mother's access to judicial relief, we need not address her argument that it implicates "her fundamental rights as a parent."

The Federal Constitution offers the mother no greater protection than the State Constitution with regard to her claims of error. *See id.*; *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1174 n.16 (5th Cir. 1979) (noting that a Florida statute permitting access to courts only after mediation of a medical malpractice claim is not a denial of court access). Accordingly, we reach the same result under the Federal Constitution.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.