**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0572, <u>In the Matter of Giovanni Santiago and Meghan Morrissey</u>, the court on August 16, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Meghan Morrissey (mother), appeals an order of the Circuit Court (<u>Chabot</u>, J.) approving a parenting plan granting primary residential responsibility to the petitioner, Giovanni Santiago (father), for their two children. <u>See</u> RSA 461-A:6 (Supp. 2016). She contends that the trial court erred, in applying RSA 461-A:12 (Supp. 2016), by finding that: (1) the father had a legitimate purpose for relocating to New York State prior to the issuance of any parenting orders; (2) the father's relocation was reasonable in light of that purpose; and (3) the relocation was in the children's best interest. We assume, without deciding, that RSA 461-A:12 applies in this case and that the mother's arguments are preserved. <u>See</u> <u>In the Matter of Heinrich & Curotto</u>, 160 N.H. 650, 654-55 (2010) (stating applicability of RSA 461-A:12 is not limited to cases in which final parenting orders have already been issued).

The mother further contends that the trial court committed plain error and violated her constitutional rights by not "properly" ruling on her motion that it appoint a guardian ad litem (GAL). <u>See</u> RSA 461-A:16, I (2004).

We first address the mother's arguments challenging the trial court's application of RSA 461-A:12. In this case, the father moved to Cohoes, New York after he filed his parenting petition, but before the trial court had issued temporary orders. He had been living there for a year prior to the final hearing. Pursuant to a temporary order, the parents had approximately equal parenting time, while the mother had primary residential responsibility. At the final hearing, the father sought, and the trial court granted, primary residential responsibility, thereby relocating the children from the residence where they had spent at least 150 days a year. <u>See</u> RSA 461-A:12, II (providing that RSA 461-A:12 applies "to the relocation of any residence in which the child resides at least 150 days a year").

Pursuant to RSA 461-A:12, a parent seeking to relocate has the initial burden of demonstrating, by a preponderance of the evidence, that the relocation is for a legitimate purpose and is reasonable in light of that purpose. RSA 461-A:12, V; <u>In the Matter of Pfeuffer & Pfeuffer</u>, 150 N.H. 257, 259-60 (2003). If the

parent meets this burden, the burden shifts to the parent opposing the relocation to prove, by a preponderance of the evidence, that relocating is not in the child's best interest.  RSA 461-A:12, VI; Pfeuffer, 150 N.H. at 260.

When determining residential responsibility for children, the trial court's overriding concern is the child's best interest.  In the Matter of Martin & Martin, 160 N.H. 645, 647 (2010).  In reaching such a decision, the trial court has wide discretion, and we will not overturn its determination unless it has unsustainably exercised its discretion.  Id.  This means that we review the record only to determine whether it contains an objective basis to sustain the trial court's judgment.  Id.  The trial court's determination depends to a large extent upon the firsthand assessment of the witnesses' credibility, as well as the parents' character and temperament, and its findings are binding upon this court if supported by the evidence.  Id.

We first address whether the trial court erred by finding that the father carried his prima facie burden.  The father testified that his purpose in relocating was to obtain support from the family of his current domestic partner, who is the mother of his youngest child, to find work, and to make a better life for his children than he had had in New Hampshire.  The trial court found, and the record supports, that:  (1) the support the father receives from his partner's family "differs greatly from what his mother and brother could provide in New Hampshire"; (2) he had found "full-time employment with health insurance benefits" that "affords him flexibility which has helped with his parenting time"; and (3) he had researched the schools in New York "and compared them to those in Manchester" where the mother lives.  The father further testified that he moved because he saw "a lot of potential" in New York and he was "going nowhere" in New Hampshire.

The mother argues that, in determining the legitimacy of the father's purpose in moving, the trial court should have focused exclusively upon what he knew prior to his move, rather than upon his circumstances at the time of the final hearing.  However, she does not explain why, given the particular facts of this case, the trial court should have ignored the benefits resulting from the father's move.

The mother argues that being close to his partner's family and its support was not a legitimate purpose because they "are [third] parties without significant ties to the . . . children."  However, she does not cite, nor are we aware of, any authority that a legitimate purpose must be related to the children.  Cf. Tomasko v. DuBuc, 145 N.H. 169, 171 (2000) (identifying a significant employment opportunity as a legitimate purpose).

The mother next argues that relocating to New York was not reasonable in light of the father's purposes.  She contends that he could have found a comparable job in, or closer to, New Hampshire.  However, the father testified

that he anticipated "multiple job opportunities that might happen through [his partner's] family." Thus, the trial court could have reasonably inferred that he obtained his job through his partner's family's influence, which would not have been available in another location. To the extent that the mother argues that moving to New York did not place the father closer to his own extended family, this was not his purpose. We note that the father testified that his mother receives substance abuse treatment.

To the extent that the mother argues that the father did not obtain the trial court's approval for, or her consent to, his move and did not notify her well in advance, she does not explain why he was required to do so. See RSA 461-A:12, II. To the extent that she argues that the trial court did not make findings to support its conclusion that New York was a reasonable location for the father's purpose, we assume that the trial court made all subsidiary findings necessary to support its general ruling. See Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 586 (2004).

Accordingly, we conclude that the record contains an objective basis to sustain the trial court's judgment that the father relocated for a legitimate purpose and to a location that was reasonable in light of that purpose. See Martin, 160 N.H. at 647.

We next address whether the trial court erred by finding that the mother did not sustain her burden to show that relocating the children was not in their best interest. In determining what is in a child's best interest, the trial court considers the following factors: (1) each parent's reasons for seeking or opposing the move; (2) the quality of the relationships between the child and each parent; (3) the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent; (4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally, and educationally by the move; (5) the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements; (6) any negative impact from continued or exacerbated hostility between the parents; and (7) the effect that the move may have on any extended family relations. Tomasko, 145 N.H. at 172. The trial court should also consider the interests of the new family unit as a whole. Id.

No one factor is dispositive, nor are these the exclusive factors bearing upon a determination of a child's best interest. Pfeuffer, 150 N.H. at 260. While a trial court is not required to consider each factor individually or to make specific findings on each factor, it should not rely upon one factor to the exclusion of the others. See id. We decline the mother's request that we review the trial court's determinations regarding these factors de novo. See id. at 259 (stating that we review trial court findings on Tomasko factors for unsustainable exercise of discretion).

3

In this case, the trial court "genuinely question[ed] whether Mother would support, endorse and preserve the children's relationships with Father, should she remain the custodial parent." Cf. In the Matter of Miller & Todd, 161 N.H. 630, 641 (2011) (stating that "a sustained course of conduct by one parent designed to interfere in the child's relationship with the other casts serious doubt upon the fitness of the offending party to be the custodial parent" (quoting Renaud v. Renaud, 721 A.2d 463, 466 (Vt. 1998))).

The trial court's concern was supported by the testimony of the father and his partner regarding the various ways in which the mother had not supported the father's parenting time, including: (1) screaming at him in front of the children; (2) blocking his telephone access to the children when she was angry; (3) calling the police to check on the children when they were with the father's partner; (4) placing the children in counseling without consulting the father; (5) not sharing the transportation for the father's parenting time; and (6) taking the children away without telling the father in advance when she knew that he was making the three-hour drive to collect them for his scheduled parenting time. The trial court found that the father "is more motivated to do what is in the [children's] best interest," including supporting their relationships with the mother and with extended family in New Hampshire.

The mother argues that "neither party communicates well with the other." However, the trial court "attribut[ed] a fair amount of this difficulty to Mother, as she acts unilaterally, often making decisions without regard to Father and his role as a parent."

Furthermore, the trial court found that the father had "succeeded in enhancing his life economically and emotionally by moving to New York" and that the children's "lives would be similarly enhanced economically, emotionally and educationally by relocating to New York." The trial court noted "the evident instability in Mother's life in the form of changes in housing, inconsistent familial relations, and questionable friendships/associations."

The mother argues that the children's lives will not be enhanced by relocating to the father's home. She contends that the father's partner's family would cease to support the children if the partner and the father separated. However, the children's half-sibling is related to the partner's family, and the partner testified that her extended family had welcomed the children "[w]ith open arms." The mother contends that there is no evidence that the father's area schools are better than those where she lives. However, the father testified, without objection, that he had examined statistics regarding the schools in both areas, that the schools where he now lives have better student-teacher ratios, and that the only category in which the mother's school excels is "diversity."

4

The mother argues that the trial court's finding that her living situation has been unstable is not supported because "the record shows she has been living in the same apartment since 2012." However, the mother testified that she moved into her current apartment in May 2016, approximately three months before the hearing. The mother testified that she filed a domestic violence petition against her mother, in which she "may have fabricated a little," but that she regularly leaves the children in her mother's care. We note that the final parenting plan prohibits the children being left alone with the maternal grandmother.

The mother testified that she believed that her best friend had been arrested only once and that she was sure that another friend had a criminal record because "[s]he has a drug past like everybody else." Although the mother testified that she last used drugs in January 2016, the father testified that in June 2015 the maternal grandmother had told him that the mother's "drinking and drugging was escalating, spiraling." The mother acknowledged that on one occasion she took one of the children with her to purchase drugs. The father testified, and the mother confirmed, that on another occasion she was so intoxicated that she opened a car door into her face, possibly breaking her own nose.

The mother testified that she struck the older child in the mouth to discipline her, making her nose bleed.

The mother argues that she lacks "the financial ability to travel to New York on any regular basis." However, the trial court ordered that the parents exchange the children in West Chesterfield, New Hampshire. To the extent that the mother argues that she cannot afford to attend the children's events in New York, we note that she testified that she goes white-water rafting and sky-diving.

The mother argues that the parenting plan "entirely changed the character of [her] parenting status, from the historically custodial parent to [the] non-custodial parent." However, the trial court found that "because it is approximately a three (3) hour drive between Father's and Mother's homes, . . . it is feasible to preserve the [children's] relationships with the non-custodial parent through suitable visitation." We note that the mother does not challenge the trial court's finding, pursuant to RSA 461-A:6, that giving the father primary residential responsibility is in the children's best interest.

The mother expresses various concerns about the impact of relocating the children, including that: (1) they will have to spend too much time driving; (2) the father makes her wait to speak with the children until it is convenient for them; and (3) maintaining her parenting time will become financially difficult if either parent becomes unemployed. She further argues that she is willing to take a drug test to demonstrate that she is no longer abusing drugs. However, none of these concerns compelled the trial court to reach a different decision.

5

On this record, we conclude that the trial court did not unsustainably exercise its discretion in finding that the mother had not met her burden to show that relocating the children was contrary to the children's best interest. <u>See</u> <u>Martin</u>, 160 N.H. at 647.

We next address whether the trial court committed plain error by not "properly" ruling on the mother's motion to appoint a GAL. <u>See</u> <u>In the Matter of Brownell & Brownell</u>, 163 N.H. 593, 602 (2012) (describing plain error rule). The mother filed her motion on February 12, 2016. She did not request a hearing. By notice of decision dated March 22, 2016, the trial court denied the motion "at this time," but indicated it could be raised again at the pre-trial conference, which had already taken place on March 3. The pre-trial conference report issued on March 22 stated that the parties were returning to mediation. <u>See</u> <u>Fam. Div. R.</u> 2.15 ("Absent good cause shown, a guardian ad litem shall not be appointed while the parties are engaged in mediation."). Thus, it reserved ruling on the motion for a GAL until the final hearing.

The mother argues that the trial court violated her right to procedural due process because it ignored her "interest in having her motion ruled upon" and prevented her from seeking reconsideration. However, the trial court denied her motion on March 22, after which she could have moved for reconsideration or renewed her motion later; the record does not reflect that she did either. To the extent that the mother argues that reserving the motion at the pre-trial conference until the final hearing was "nonsensical," we disagree. The trial court could have decided, after hearing all the evidence at the final hearing, that a GAL's input was necessary to enable it to reach a decision. To the extent that the mother argues that the trial court should have granted the motion, under RSA 461-A:16, I (2004), whether to appoint a GAL is within the trial court's discretion. <u>In the Matter of Conner & Conner</u>, 156 N.H. 250, 252 (2007). On this record, we cannot say that the trial court unsustainably exercised its discretion. Accordingly, we find no error, plain or otherwise. <u>See</u> <u>Brownell</u>, 163 N.H. at 602 (no plain error when no error).

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**

6