# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0450, <u>In the Matter of Matthew Higgins and Nicole Richards</u>, the court on April 23, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The petitioner, Matthew Higgins (Father), appeals orders recommended by a Marital Master (<u>Cooper</u>, M.) and approved by the Circuit Court (<u>McIntyre</u> and <u>Alfano</u>, JJ.) allowing the respondent, Nicole Richards (Mother), to relocate with the parties' child, <u>see</u> RSA 461-A:12 (Supp. 2019). We affirm.

RSA 461-A:12, V-VI establishes a two-part test, known as the burden-shifting test, that applies when a parent seeks to relocate the residence of a child. <u>In the Matter of Heinrich & Curotto</u>, 160 N.H. 650, 654 (2010). Under this test, the parent petitioning for relocation must demonstrate that the relocation is for a legitimate purpose and is reasonable in light of that purpose. RSA 461-A:12, V. If the petitioning parent meets this burden, the opposing party then has the burden of proving that the relocation is not in the child's best interest. RSA 461-A:12, VI; <u>Heinrich</u>, 160 N.H. at 654. We have identified seven factors, referred to as the <u>Tomasko</u> factors, for a trial court to consider when determining whether a proposed relocation is in a child's best interest:

> (1) each parent's reasons for seeking or opposing the move; (2) the quality of the relationships between the child and the custodial and noncustodial parents; (3) the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent; (4) the degree to which the custodial parent's and child's life may be enhanced economically, emotionally, and educationally by the move; (5) the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements; (6) any negative impact from continued or exacerbated hostility between the custodial and noncustodial parents; and (7) the effect that the move may have on any extended family relations.

<u>Tomasko v. DuBuc</u>, 145 N.H. 169, 172 (2000). No one factor is dispositive, nor are these the exclusive factors bearing upon a determination of a child's best interest. <u>In the Matter of Pfeuffer & Pfeuffer</u>, 150 N.H. 257, 260 (2003). While a trial court is not required to consider each factor individually or to make

specific findings on each factor, it should not rely upon one factor to the exclusion of the others.  See id.

We review the trial court's decision under our unsustainable exercise of discretion standard.  Heinrich, 160 N.H. at 655.  We will affirm the findings and rulings of the trial court unless they are unsupported by the evidence or legally erroneous.  In the Matter of Lynn & Lynn, 158 N.H. 615, 617 (2009). "We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence."  O'Malley v. Little, 170 N.H. 272, 275 (2017) (quotation omitted).  "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence."  Id. (quotation omitted).  "Nevertheless, we review the trial court's application of the law to the facts de novo."  Id. (quotation omitted).

On appeal, Father argues that the trial court erroneously: (1) failed to address the statutory analysis required under RSA 461-A:12 as to the reasonableness of Mother's relocation to Florida; and (2) failed to address the Tomasko factors when it concluded that relocation was in the child's best interests.  We address each argument in turn.

Father faults the trial court for failing to explain why Mother's legitimate purpose for the relocation was not achievable by moving to a location substantially less disruptive to his relationship with the child.  See Tomasko, 145 N.H. at 171-72 (observing, with approval, that the Connecticut Supreme Court has held that "'relocation motivated by a legitimate purpose should be considered reasonable unless its purpose is shown to be substantially achievable without moving, or by moving to a location that is substantially less disruptive of the other parent's relationship to the child.'" (quoting Ireland v. Ireland, 717 A.2d 676, 682 (1998))).

To support his argument, Father relies upon two 3JX orders, which lack precedential value.  See In the Matter of Sullivan and Sullivan, Case No. 2014-0256, 2015 WL 11182025, at *2 (N.H. May 22, 2015); In the Matter of Warren and Warren, Case No. 2012-0498, 2013 WL 11992455, at *1 (N.H. May 13, 2013); see also Sup. Ct. R. 12–D(3) (although a 3JX order has no precedential value, it may be cited or referenced in pleadings or rulings in any court in this state, as long as it is identified as a non-precedential order).  Both of these cases are distinguishable from the instant case.

In both Sullivan and Warren, the trial courts found that the proposed relocation would harm the relationship between the non-relocating parent and the child/children.  See Sullivan, 2015 WL 11182025, at *2 (observing that the trial court's factual findings indicated that the authorized relocation might disrupt the non-relocating parent's relationship with the child); Warren, 2013

2

WL 11992455, at *1 (noting that the trial court found that the mother's relocation "has precluded the children from having the active and regular involvement of both of their parents in their lives which the Legislature has determined in their best interest" (quotation omitted)).

By contrast, in the instant case, the trial court found that the proposed relocation would, ultimately, provide Father with more parenting time than he has under the parties' current parenting plan, and that it would not negatively impact his relationship with the child. Under the parties' current parenting plan, Father and the child see each other for two weekends and two weekday afternoons per month. The trial court found that, under the proposed parenting plan based upon Mother's relocation, Father and the child will be with one another "for weeks at a time, particularly during Spring and Summer school breaks." The record supports that finding. As the trial court observed, "both parties testified that under . . . the proposed parenting plan in the event of relocation, [the child] and his father would spend more time together in the aggregate each year although it would be less frequent." As we recognized in Tomasko:

> There are undoubtedly circumstances in which the loss of midweek or every weekend visits necessitated by a distant move may be devastating to the relationship between the noncustodial parent and the child. However, there are undoubtedly also many cases where less frequent but more extended visits over summers and school vacations would be equally conducive, . . . to the maintenance of a close parent-child relationship, since such extended visits give the parties the opportunity to interact in a normalized domestic setting.

Tomasko, 145 N.H. at 173 (quotation omitted).

Father also relies upon the unpublished order in In the Matter of Scheidegg and Pulsifer, Case No. 2014-0817, 2015 WL 11079371, at *2 (N.H. Sept. 17, 2015). He asserts that, in that case, we agreed with the trial court that the mother's "relocation choice was not reasonable" because she had failed to provide evidence of having conducted a New Hampshire job search and had not demonstrated that she sought employment in locations closer to the child's current residence. Father misconstrues our order in Scheidegg. In fact, we vacated the trial court's order and remanded because the court had failed "to make findings as to whether the proposed location is reasonable in light of all of the reasons given by the mother." Scheidegg, 2015 WL 11079371, at *2.

As to the best interests analysis, Father contends that the trial court failed to identify and apply the Tomasko factors. We do not share his interpretation of the trial court's order. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (explaining that the interpretation of a trial court

3

order presents a question of law, which we review <u>de</u> <u>novo</u>).  In its narrative order, and in granting certain of the respondent's specific requests for findings of fact, the trial court sufficiently reviewed and sustainably applied the <u>Tomasko</u> factors.  To the extent that Father contends that the trial court was required to specifically make a factual finding as to each <u>Tomasko</u> factor, he is mistaken.  <u>See</u> <u>Pfeuffer</u>, 150 N.H. at 260.  Although the evidence as to the <u>Tomasko</u> factors was conflicting, it was for the trial court to resolve those conflicts in the first instance, and we defer to its judgment in so doing.  <u>See</u> <u>O'Malley</u>, 170 N.H. at 275.

<u>Affirmed</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**