# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0129, <u>In the Matter of Marc Hebert and Kelly Hebert</u>, the court on February 2, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). Husband, Marc Hebert, appeals the parties' final divorce decree recommended by a Marital Master (<u>Cooper</u>, M.) and approved by the Circuit Court (<u>Alfano</u>, J.). We vacate the trial court's property division and alimony awards, affirm the trial court's findings regarding the values of Microelectrodes, Inc. and Pleasant Bay, LLC, the imputation of certain income to Husband, and the award of attorney's fees and costs to Wife, Kelly Hebert, due to Husband's violation of court orders, and remand for proceedings consistent with this order.

I.    <u>Facts</u>

The following facts either were found by the trial court or derive from the record submitted on appeal. The parties were married on April 29, 1995, and have one adult child, born January 29, 2002, who has a learning disability. As of the date of the final hearing, Husband was 61 years old, and Wife was 53. Husband filed for divorce on February 28, 2018. A temporary hearing was held on June 13, 2018, after which the trial court ordered that the two homes owned by the parties be listed for sale immediately, and that all proceeds be held in escrow. The court calculated child support, but ordered that Husband's first child support check would not be due until one of the two homes sold. The court did not award alimony, and ordered Wife to pay all of the son's educational expenses until one of the two homes sold, after which Wife was to be reimbursed from the proceeds of the sale.

A final hearing was held on September 2 and 3, 2021. By that time, the two homes had been sold, Wife had received $10,000 in child support payments from Husband, and the remaining $247,163.40 from the sale of the homes was being held in a trust account at the office of Wife's attorney. Between the date of the temporary hearing and the final hearing, the parties engaged in discovery, but, as the trial court stated in its narrative order, Husband "had considerable difficulty in providing discovery requested of him . . . . It has only been after the entry of orders on motions compelling information that [Husband] provided information, which should have been

provided in the first instance considerably earlier in this process." Because Husband had not complied with disclosure requirements in Family Division Rule 1.25-A or provided discovery relevant to determining his income for purposes of alimony and the value of Husband's business, Microelectrodes, Inc., Wife hired an expert witness to prepare an income report for Husband and a valuation report for Microelectrodes, Inc.

Husband's father founded Microelectrodes, Inc. in 1970, and Husband has worked there for over 40 years. Wife worked at the business at times, in a limited capacity. Microelectrodes, Inc.'s manufacturing facility is located on real property in Bedford, owned by Pleasant Bay, LLC. When Husband's father passed away prior to the final hearing in this matter, Husband became the owner of both Microelectrodes, Inc. and Pleasant Bay, LLC. Pleasant Bay, LLC does not collect rent from Microelectrodes, Inc.

Two experts testified at the final hearing. Richard J. Maloney testified regarding two reports he had prepared, one relating to Husband's income from Microelectrodes, Inc., and the other relating to the value of the business. Maloney's expert report on income concluded that Husband's gross income was $242,035 in 2018, $287,192 in 2019, and $129,018 in 2020. Maloney's business valuation report determined that a willing buyer would pay $154,000 for the assets of the company, the largest of which are cash and accounts receivable. Expert Peter Stanhope testified at the hearing about an appraisal report he had prepared regarding the property owned by Pleasant Bay, LLC. Stanhope testified that the highest and best use of the property would be to subdivide it into two parcels. One parcel, on which the manufacturing facility is located, had a fair market value of $450,000. The newly created vacant lot, taking into consideration the cost of engineering and subdivision, would have a fair market value of $160,000. Accordingly, Stanhope opined that the value of the property owned by Pleasant Bay, LLC was $610,000.

Husband has an Eldridge IRA that had a value of approximately $302,000 in January 2018, prior to Husband's filing for divorce. Husband took $96,000 in distributions from the IRA in 2018 and additional distributions in 2019 totaling $124,333.33. The value of the account as of June 30, 2021, was $115,877.80. Husband also has a Fidelity IRA valued at approximately $31,000 as of June 30, 2021.

Wife was the primary homemaker and childcare provider for the parties' son. Other than the work that she performed at Microelectrodes, Inc., Wife did not engage in significant employment outside the home after their son's birth. Due to the educational needs of their son, Wife and son relocated out of state in 2018 and again in 2019. During this time, Wife was not able to find employment. According to her testimony at the final hearing, Wife began to work for the Internal Revenue Service as a seasonal, probationary customer

service representative on July 19, 2021, and is guaranteed work for six to eight months per year. Her pay, based on working 12 months per year, is $38,334.

In 2017, Wife received $513,000 and $135,000 in separate lawsuit settlement proceeds. Both settlements arose from probate litigation initiated in New Jersey relating to the assets of the estate of Wife's grandmother. From the $513,000, Wife reimbursed her mother for $213,000 in legal fees that were incurred during the course of that litigation, and Wife still owes approximately $52,000 in legal fees to her former attorney in New Jersey.

The trial court issued final orders in this matter on January 18, 2022. The narrative order states that it is "necessarily brief as the requests for Findings and Rulings submitted were nearly 20 pages in length," and the narrative order was "intended only to address those issues not addressed by the findings." The trial court granted a majority of Wife's requests for findings and rulings, including Wife's request for attorney's fees and costs. In its narrative order, final decree, and uniform alimony order, as relevant to this appeal, the trial court: (1) found the fair market value of Microelectrodes, Inc. to be the value Maloney had set forth in his expert report, and ordered Husband to pay Wife half the value of the company ($77,000); (2) ordered Husband to pay Wife half the fair market value of Pleasant Bay, LLC, as determined by Stanhope ($305,000); (3) awarded Wife the proceeds held in escrow from the sale of the parties' homes ($247,163.40); (4) ordered Husband's retirement assets to be distributed equally between the parties; and (5) found that while Wife is in need of alimony, the need is not at the level requested, and Husband does not have the ability to pay at the level requested, and ordered Husband to pay wife $2,640 per month for 13 years.

On appeal, Husband argues that the trial court unsustainably exercised its discretion when it: (1) did not include the proceeds of the two lawsuit settlements in the marital property subject to equitable distribution; (2) ordered 13 years of alimony and imputed significant income to Husband by relying on Maloney's expert report; (3) awarded Wife 100% of the proceeds of the sale of the marital homes; (4) awarded Wife 50% of the value of Microelectrodes, Inc.; (5) awarded Wife 50% of the value of Pleasant Bay, LLC; and (6) awarded Wife attorney's fees.

II.    Analysis

The trial court has broad discretion in determining matters of property division and alimony when fashioning a final divorce decree. In the Matter of Gronvaldt & Gronvaldt, 150 N.H. 551, 554 (2004). We review its decision under our unsustainable exercise of discretion standard. See id. This standard requires that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been

3

made.  In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011).  We will not substitute our judgment for that of the trial court or reweigh equities.  In the Matter of Braunstein & Braunstein, 173 N.H. 38, 47 (2020).

## A.  Property Division

On appeal, Husband challenges several aspects of the property division.  Because we conclude that it was error for the trial court to find, as a matter of law, that the proceeds of the two lawsuit settlements were not marital property subject to equitable division, we vacate the property division portion of the trial court order.  In the interest of judicial economy, we also address Husband's additional arguments regarding division of property that are likely to arise on remand.

When considering how to equitably apportion marital property in a divorce case, the trial court must first determine, as a matter of law, what constitutes "marital property" under RSA 458:16-a.  See In the Matter of Cohen & Richards, 172 N.H. 78, 83 (2019).  Accordingly, we review de novo the trial court's ruling that "[t]he other lawsuits [Wife] was involved in are not considered marital property."

In New Hampshire, by statute, "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties," is subject to equitable distribution.  RSA 458:16-a (2018).  Based upon this broad statutory language, we have adopted the "mechanistic approach" to determine whether an item constitutes marital property.  Cohen, 172 N.H. at 84; see In the Matter of Preston and Preston, 147 N.H. 48, 49 (2001).  Under this approach, property subject to equitable distribution includes any property acquired by one of the divorcing parties before the decree of legal separation or divorce.  Cohen, 172 N.H. at 84; see In the Matter of Heinrich & Heinrich, 164 N.H. 357, 361 (2012).  Accordingly, we have held that an award or settlement acquired by one of the divorcing parties during the marriage constitutes marital property "regardless of the underlying purpose of the award or the loss it is meant to replace."  Cohen, 172 N.H. at 91 (quotation omitted); see Heinrich, 164 N.H. at 360; Preston, 147 N.H. at 49-50.

The trial court adopted Wife's request for a ruling of law, citing our decision in In the Matter of Letendre & Letendre, 149 N.H. 31 (2002), that the proceeds from the lawsuits are not considered marital property.  Letendre does not stand for this proposition.  At issue in Letendre were proceeds from a gender discrimination lawsuit.  Letendre, 149 N.H. at 33.  The wife was awarded a verdict against a Massachusetts country club, and at the time of the appeal in the marital case, that verdict was on appeal in Massachusetts.  Id.  In Letendre, we assumed, without deciding, that the verdict was marital property, but held that the trial court's decision to award the entire verdict to the wife

4

was a sustainable exercise of discretion.  Id. at 36-37.  In the present case, the trial court ruled as a matter of law that the proceeds of the settlement were not part of the marital estate.  In doing so, the trial court erred.

We are unable to determine how the trial court would have distributed the marital property had it not made this legal error, in part because it is not clear whether the trial court intended to distribute the marital property equally or unequally.  Under RSA 458:16-a, II, "an equal division of property is presumed equitable unless the trial court decides otherwise after considering one or more of the factors designated in the statute."  In the Matter of Geraghty & Geraghty, 169 N.H. 404, 417 (2016) (quotation omitted).  The statute lists factors that the court may consider, see RSA 458:16-a, II, and also permits the court to consider any other factor it deems relevant, see RSA 458:16-a, II(o); see also In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006).  The court need not consider all of the enumerated factors or give them equal weight.  Geraghty, 169 N.H. at 417.  Additionally, a trial court is not precluded from awarding a particular asset in its entirety to one party.  Letendre, 149 N.H. at 36.  On remand, the trial court shall clarify whether an unequal division of the property generally, or with respect to individual assets, is intended.  If so, the trial court shall articulate the bases of the award.

Because we vacate that portion of the order relating to property division, we need not consider Husband's arguments that the trial court erred in awarding Wife the proceeds from the sale of the marital home, 50% of the value of Microelectrodes, Inc., and 50% of the value of the real property held by Pleasant Bay, LLC as part of the overall distribution.  In the interest of judicial economy, and because the issues are likely to arise on remand, we do address Husband's arguments regarding the values the trial court assigned to Microelectrodes, Inc. and Pleasant Bay, LLC.

Husband argues that the trial court erred in accepting Maloney's valuation of Microelectrodes, Inc.  The trial court specifically found the expert and his report "credible with respect to . . . the value of the business," and concluded that the value of the business is $154,000.  Husband did not submit an expert report or present expert testimony at the final hearing, but cross-examined Maloney about his findings and conclusions.  On appeal, Husband continues to challenge particular findings made in the report and asserts that it was error for the trial court "to use a figure contrived by [Wife's] expert who ignored the reality of debts and liabilities . . . ."  Husband's challenges to the expert opinion go to the weight to be given the opinion.  We defer to the trial court's judgment as to the credibility of witnesses and the weight to be accorded evidence.  In the Matter of Heinrich & Curotto, 160 N.H. 650, 657-58 (2010); cf. Baker Valley Lumber v. Ingersoll-Rand, 148 N.H. 609, 615 (2002) (explaining that objections to the basis of an expert's opinion go to the weight to be accorded the opinion evidence, and not to its admissibility).  Accordingly, we conclude that the trial court did not unsustainably exercise its discretion,

and affirm the trial court's finding that the value of Microelectrodes, Inc. is $154,000.

Husband also contends that the trial court unsustainably exercised its discretion when it adopted Stanhope's opinion that the value of the land upon which Microelectrodes, Inc. sits is $610,000. Husband did not submit an expert report or present expert testimony at the final hearing regarding the value of property, but argued that the trial court should use the Town of Bedford's property assessment, and that Stanhope's opinion that the highest and best use of the land was to subdivide it into two parcels was speculative. To the extent that Husband argues that the trial court should have used the tax-assessed value of the property, we disagree. In determining values for the purposes of the division of marital property, courts generally look to fair market value. See Rattee v. Rattee, 146 N.H. 44, 50 (2001). The trial court had before it two proffers to support a finding of fair market value. It was within the trial court's discretion to weigh the evidence, decline to use the tax-assessed value to determine fair market value, and to credit Stanhope's opinion. Curotto, 160 N.H. at 657-58; cf. Baker Valley Lumber, 148 N.H. at 615.

We disagree with Husband's contention that Stanhope's opinion was "speculative." Husband argues that the property is filled with "rubble," and that the basis for Stanhope's opinion that the property could be subdivided was simply the size of the lot and the Town of Bedford's requirements for lot size. The record demonstrates otherwise. Stanhope testified that he inspected the property, that subdivision is allowed under the zoning ordinance, that there is adequate acreage and frontage to subdivide it, and that he or someone from his office contacted the Town of Bedford's planning department, which opined that subdivision is considered reasonable, but would require approval. Again, we defer to the trial court's judgment as to the credibility of witnesses and the weight to be accorded evidence. Curotto, 160 N.H. at 657-58; cf. Baker Valley Lumber, 148 N.H. at 615. Accordingly, we conclude that the trial court did not unsustainably exercise its discretion, and affirm the trial court's finding that the value of the land upon which Microelectrodes, Inc. sits is $610,000.

B. Alimony

The circuit court has broad discretion to determine the amount and duration of alimony. See In the Matter of Nassar & Nassar, 156 N.H. 769, 772 (2008). Alimony determinations are based primarily upon the parties' income and need. Cohen, 172 N.H. at 83; see RSA 458:19-a (Supp. 2023). RSA 458:19-a, II governs the calculation of a term alimony award. It provides that "[t]he amount of a term alimony order shall be the lesser of the payee's reasonable need, or a formula based on 23 percent of the difference between the parties' gross incomes at the time the order is created, unless the court finds that justice requires an adjustment." RSA 458:19-a, II(a). Husband does not argue that Wife does not have a need for alimony. Nor does he appear to

dispute that it is appropriate to apply the formula set forth in RSA 458:19-a. Rather, he argues that the trial court erroneously concluded that his gross income, for the purposes of calculating alimony, was $176,073.13. We agree with Husband's reading of the trial court order. The uniform alimony support order states that Husband is to pay Wife $2,640 per month for 13 years. The order also states, "Term alimony is computed based on [Husband's] financial affidavit and credible report and testimony provided by Richard Maloney. Term alimony is computed based on [Wife's] annual salary of $38,334." Although it is not clear from the record what the trial court used for Husband's income, if the trial court applied the formula in RSA 458:19-a, it appears to have designated Husband's gross income to be $176,073.13.

Maloney concluded that Husband's gross income was $242,035 in 2018, $287,192 in 2019, and $129,018 in 2020. However, the 2018 income included a $96,000 distribution from Husband's IRA, and the 2019 income included both a $124,233 distribution from Husband's IRA and a capital gain from the sale of the parties' Cape Cod home in the amount of $38,597. Maloney agreed on cross-examination that he was reporting Husband's income for the years in question, and was not projecting Husband's future income. Because the IRA withdrawals and the capital gain were isolated transactions, they cannot be used to determine Husband's present or future income for the purposes of determining alimony. Accordingly, we agree with Husband that to the extent that it did so, the trial court erred in including IRA withdrawals and capital gains in Husband's gross income for the purposes of determining Husband's alimony obligation. Removing the IRA withdrawals and the capital gain, Husband's income was $146,035 in 2018, $124,362 in 2019, and $129,018 in 2020. Accordingly, the trial court's alimony award appears to have exceeded the statutory calculation, without explanation as to why justice required an adjustment. See RSA 458:19-a, II(a). We therefore vacate the trial court's alimony award.

Because we vacate the portion of the trial court order relating to alimony, we do not consider Husband's argument that the trial court erred when it ordered term alimony covering a period exceeding Husband's full retirement age. In the interest of judicial economy, and because the issue is likely to arise on remand, we do address Husband's argument that the trial court erred when it relied on Maloney's expert report and imputed certain income to Husband.

Maloney concluded that certain charges contained in the Microelectrodes, Inc. accounting records were not actually business expenses, but were Husband's personal expenses. As we have noted, the trial court did not make a specific finding as to Husband's gross income. However, in its narrative order, the trial court stated that "Mr. Maloney's credible testimony was that the Internal Revenue Service would treat those expenses paid through the business as personal items (and therefore income to him) . . . ." Accordingly, we conclude that the trial court adopted Maloney's conclusions

that Microelectrodes, Inc.'s accounting records included certain business expenses amounting to $69,929 in 2018, $72,842 in 2019, and $68,754 in 2020 that were actually Husband's personal expenses.

Husband argues that Maloney's methodology was flawed and that the trial court "gave undue weight" to his testimony that the expenses should be considered personal because, in the absence of documentation to support the conclusion that they were business expenses, the Internal Revenue Service would treat them as personal expenses. The trial court acknowledged that it was "apparent from the evidence presented that some of the Amazon orders [Husband] placed were for business purposes," but noted that Husband

> did not offer any credible evidence to support his contention that they should not be attributable to his personal expenses. Had he made timely disclosure of the multitude of discovery requests made of him for information during the course of time this case has been pending perhaps the Court would have a better record to support his requested relief. However, he did not do so. Consequently, the Court has little credible evidence in his favor on the pending issues.

We note that Husband seemed to concede at the hearing that his income was higher than that reflected on his W-2s, but that he had reviewed three years of Amazon records and offered that "maybe 500 to 1,000 dollars a month could be classified as personal." On appeal, Husband argues that the trial court should have credited his testimony over Maloney's. He asserts that Maloney relied upon a chart of the charges Wife had put together and did not cross-check each item on the pages she provided with the actual credit card statements because, according to Maloney, doing so would have been cost-prohibitive. Where, as here, Husband's testimony was less specific than the expert's and given that, despite having been asked in discovery to provide that information, Husband did not supply documentation that demonstrated that the charges were business expenses rather than personal expenses, we cannot say that the trial court unsustainably exercised its discretion when it credited Maloney's testimony over Husband's. See Curotto, 160 N.H. at 657-58; cf. Baker Valley Lumber, 148 N.H. at 615. Accordingly, we conclude that the trial court did not unsustainably exercise its discretion, and affirm the trial court's imputing additional income to Husband of $69,929 in 2018, $72,842 in 2019, and $68,754 in 2020.

C. Attorney's Fees

Husband argues that the trial court erred as a matter of law or unsustainably exercised its discretion when it granted Wife's request for an award of attorney's fees and costs. Wife filed a motion requesting that the court find Husband in contempt for his failure to comply with Rule 1.25-A

8

disclosures and all discovery. She also requested attorney's fees in her motion, along with several earlier motions for contempt and motions for default. In section 21 of the final decree, the trial court made the following ruling:

> [Wife's] Motion for Contempt at the Court's March 1, 2021 orders compelling [Husband] to produce outstanding Rule 1.25-A disclosures and discovery is granted. [Wife] is awarded attorney's fees and costs due to [Husband's] violation of the Court Orders, including attorney's fees for preparing, filing, and arguing all Motions for Contempt. [Wife's] counsel has filed three separate Motions for Default, dated October 16, 2019, May 20, 2020, and July 9, 2020, as well as four Motions to Compel, dated June 6, 2018, November 2, 2018, September 18, 2020, and February 12, 2021, requesting the discovery. [Wife's] request for an award of attorney's fees and costs due to [Husband's] violation of multiple Court Orders for failure to produce discovery and Rule 1.25-A disclosures is granted. [Wife's] attorney shall within 30 days of the Court's Notice of Decision file an Affidavit of Fees related to actions undertaken to enforce these particular motions.

As we read the final decree, the trial court ruled, pursuant to RSA 458:51 (2018), that Husband was in contempt of its March 1, 2021 order, and sanctioned Husband for his failure to comply with the order by requiring Husband to pay the attorney's fees and costs associated with the multiple motions Wife filed to compel Husband to produce discovery. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (explaining that the interpretation of a court order presents a question of law for this court). We disagree with Husband's suggestion that the trial court ruled on motions that had previously been ruled on and that "were not renewed or at issue at the Final Hearing." It is clear from the record that Wife was required to file multiple motions to compel Husband's compliance with outstanding discovery requests, and that his failure to comply ultimately led to the filing of the motion for contempt. Accordingly, we affirm the trial court's award to Wife of attorney's fees and costs due to Husband's violation of the court orders.

> Vacated in part; affirmed in part; and remanded.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred; HICKS, J., sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78.

**Timothy A. Gudas,**
**Clerk**
